Schimke, by Guardian *ad litem,* and another, Respondents, vs. Mutual Automobile Insurance Company of the Town of Herman, Appellant.

*April 5—May 4, 1954.*

518

For the appellant there was a brief by *Lehner, Lehner & Behling* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner* and *Eugene E. Behling.*

For the respondents there was a brief by *J. Kyle Anderson* of Waupaca, and *Benton, Bosser, Becker & Fulton* of Appleton, and oral argument by *David L. Fulton.*

MARTIN, J.    The first question on this appeal is whether the verdict is sustained by the evidence.

The only testimony with regard to how the accident happened is that of Lloyd Schimke:

"There is a little bend in the road. It seems we met a car and two wheels dropped off the pavement, the right two

wheels, and he was going to bring it back in the road when we hit a bump and it started zigzagging and that is all I remember."

He further testified:

"*Q*. Did he continue on the shoulder for some distance? *A*. No, as the car went past he was bringing it back."

Defendant contends that since there is no explanation why the car started to zigzag, the finding of negligence is pure speculation. It cites *Baars v. Benda* (1946), 249 Wis. 65, 23 N. W. (2d) 477, where a car suddenly left the highway and after the accident the steering apparatus was found to be broken. In that case it was held that there being no evidence of negligence and no evidence as to when the steering wheel was broken, the jury could only speculate whether the accident was caused by the failure of the steering apparatus or by negligent conduct of the driver. Where the evidence is as consistent with the theory that the accident may be ascribed to a cause not actionable as to a cause that is actionable, the jury may not be allowed to guess where the truth lies. In that case the court also referred to *Klein v. Beeten* (1919), 169 Wis. 385, 172 N. W. 736, where there was a possibility that the accident might have been caused by the blowout of a tire.

Such cases are not authority for defendant's contention. There has been no showing that any nonactionable cause is present in the circumstances of this accident. No speculation is necessary for the jury to infer that Vandergate was causally negligent. There is no evidence that he was blinded by the lights of the oncoming car nor that it crowded him off the pavement; nor is there evidence that any defect existed in the car which might have caused it to drop off the pavement or zigzag out of control. From the fact that the car dropped off the concrete, hit a bump as Vandergate tried to bring it back and then zigzagged and overturned, the jury

could reasonably infer that the accident was caused by the driver's negligent management and control.

The holding of *Wisconsin Telephone Co. v. Matson* (1950), 256 Wis. 304, 311, 41 N. W. (2d) 268, answers defendant's contention. There the physical evidence showed that a truck driven by one Nielson struck a telephone pole, but there was no direct evidence of negligence. After reviewing previous decisions this court stated:

"Counsel has suggested that the driver of the Matson truck may have been forced into the telephone pole by another car or perhaps a man stepped in front of the truck causing him to swerve. This will not do unless it is shown that there was such other truck or man. Until then the circumstances are not consistent with any theory save negligent operation. . . . The jury may not guess that an actionable cause rather than one not actionable produced the accident when the possible nonactionable cause is present in the evidence of the circumstances, but when the nonactionable cause is present only in the imagination the question of speculation between the two or more possible causes does not arise."

Defendant further argues that the jury should have been asked to decide whether Vandergate exercised the degree of judgment and skill possessed by him at the time of the accident.

The record discloses that defendant's counsel approved the verdict as submitted and he may not now complain that all necessary issues were not submitted. At the close of the testimony the trial court invited the assistance of the attorneys in preparing the special verdict, recited the questions it intended to submit, as detailed above, and then stated:

"Then there is the question of whether or not the driver, Franklin Vandergate, increased the hazard when he entered the car. I don't believe as to the management and control, if there is any such question, it seems to me that the host did not assume that negligence, if there was such negligence.

It appears also if there was such negligence he as a matter of law increased the hazard. That is my position. Do you think it would add to the trial of this case to submit the question? I will submit it but I think it is sufficient.

"By Mr. Fulton: I don't request it.

"By the Court: What do you say about it?

"By Mr. Lehner: The first question covers the situation and the cause question.

"By the Court: Except as to the questions raised in the motions I don't see any issue in this case except management and control. If the jury answers it 'Yes' there is a recovery. If they answer it 'No' there is no recovery. Do you agree that is the proper verdict?

"By Mr. Lehner: Yes.

"By Mr. Fulton: Yes."

There remains the question whether Vandergate was an additional insured under the policy.

As stated above, Lloyd Schimke contributed to the purchase of the automobile. His father testified that the car was considered to be Lloyd's car and he used it whenever he wanted to; that he never objected to the boy using it during the daytime or at night; he had seen Vandergate driving it on a number of occasions before the accident and did not object. He further stated that he knew Lloyd was going to use the car to return from Waupaca on the night of the accident and he made no objection. Under these circumstances there was implied consent on the part of the father to the use and operation of the car by Vandergate.

The question of the application of sec. 204.30 (3), Stats., requiring that the operation of the insured vehicle be with the consent of the named assured, is not presented. Coverage under the policy is broader than that required by the statute. The policy provides that the word "insured" includes "not only the named insured but also any person while using the automobile," provided "the actual use is with the permission of the named insured."

In *Maurer v. Fesing* (1940), 233 Wis. 565, 570, 290 N. W. 191, the policy provided coverage "while any automobile covered hereby is being used with the express or implied consent of the insured." The son of the insured had the express consent of his father to use the car but at the time of the accident it was being driven by the defendant Fesing, a friend of the son. We held that Fesing was an additional insured; that it was not necessary that he have the consent of the insured to operate the car, since the car was "being used" with the consent of the insured.

Under the evidence in this record there is no question but that Lloyd had the permission of his father to use the car on the night of the accident, and the rule of the *Fesing Case* applies.

*By the Court.*—Judgments affirmed.