LAUGHNAN (Lauretta), Plaintiff and Respondent, vs. GRIFFITHS, Administrator, and others, Defendants: LEA and another, Defendants and Appellants (and three other cases).*

*November 7—December 6, 1955.*

* Motion for rehearing denied, with $25 costs, on January 27, 1956.

For the appellants there was a brief and oral argument by *D. V. W. Beckwith* of Madison.

For the respondents there was a brief by *McAndrews & Melli* of Madison, for Claire and Lauretta Laughnan, by *Riley, Riley & Pierce* of Madison, for Rose Bergenske and Richard B. Corcoran, by *Marsh & Geisler* of Madison, for Carl Laughnan, and by *Schlotthauer & Jenswold* of Madison, for the Shelby Mutual Casualty Company, and oral argument by *Joseph A. Melli.*

Currie, J.  The defendant Lea was not an occupant of either of the two automobiles involved in the collision of January 25, 1952, which resulted in plaintiffs' injuries. Neither was he the owner of either vehicle.  However, in the complaints and affidavits filed in behalf of the plaintiffs it is sought to impute the driver Smith's negligence to Lea on the ground that Smith at the time of the accident was the employee, agent, or partner of Lea.

Counsel for Lea urges on this appeal that there were no facts presented to the trial court in any of the affidavits filed in support of, or in opposition to, the motion for summary judgment which expressly established any employer and employee, principal and agent, or partnership relationship to have existed between Lea and Smith at the time of the accident, or from which such a relationship could be reasonably inferred.  The first response by the respondents to this challenge is to assert that, if the allegations in the pleadings are

sufficient to raise an issue as to whether Smith was the employee, agent, or partner of Lea, then the case is not a proper one for the granting of summary judgment.

The particular complaint printed in the appendix alleges upon information and belief that at the time and place of the accident the Cadillac was either owned by Lea "or was being returned from his place of business after being repaired, and Dale C. Smith was returning said automobile at the instance and request and as an agent or employee" of Lea. The answer of the appellant defendants flatly denies such allegation.

The pertinent provisions of sec. 270.635 (2), Stats., with respect to the question now being considered are:

"The judgment may be entered in favor of either party, on motion, upon the affidavit of any person who has knowledge thereof, setting forth such evidentiary facts, including documents or copies thereof, . . . if on behalf of the defendant, . . . shall show that his denials or defenses are sufficient to defeat the plaintiff, together with the affidavit of the moving party, . . . that the action has no merit . . . *unless the opposing party shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial.*" (Italics supplied.)

Under the situation confronting us in the instant case the words *"opposing party"* of the statute refer to the plaintiffs. We deem that under the plain wording of this statute, even though the allegations of the complaint are sufficient to make out a cause of action against a defendant, if the latter has filed an affidavit, or affidavits, complying with the statute which set forth evidentiary facts clearly establishing that plaintiff has no cause of action against such defendant, such defendant is entitled to summary judgment unless the plaintiff *"shall, by affidavit or other proof, show facts which the court shall deem sufficient to entitle him to a trial."* The statutory words *"or other proof"* necessarily refer to something beyond the mere allegations of the complaint. If this

were not so, then the statute is superfluous because, in a situation where the pleadings raise no issue of fact, there are available the remedies of demurrer or motion for judgment on the pleadings.

One of the authorities relied upon by the respondent plaintiffs is *Hanson v. Halvorson* (1945), 247 Wis. 434, 19 N. W. (2d) 882, in which damages were sought to be recovered for injuries to a minor child who was struck while crossing the street by an automobile owned and driven by the defendant Halvorson. The trial court denied defendants' application for summary judgment and this court affirmed on the ground that the sufficiency of Halvorson's lookout was a jury question. This court in its opinion stated (p. 437) :

"If the pleadings, taking them as they stand, make a case for trial by a jury, a summary judgment will be denied unless it appears from the affidavits that different conclusions of essential ultimate fact cannot reasonably be drawn. Nor will such judgment be granted where it does not appear from the affidavits that no circumstances exist that tend to support an inference of essential ultimate fact contrary to that contended for by the movant, nor where it does not appear that the conclusive effect claimed for the affidavits by the movant cannot be destroyed by cross-examination. Hardly ever can a summary judgment be granted upon affidavits unless the issue raised by the pleadings undeniably depends upon documents set forth by copy in the affidavit of the moving party which are not impeached by an opposing affidavit."

We cannot agree with respondents' contention that the above-quoted statement from our opinion in *Hanson v. Halvorson, supra,* holds that summary judgment cannot be granted in a case where a genuine and substantial issue of fact is presented by the pleadings. It plainly intimates that summary judgment may be properly granted in such a situation where is does appear *"from the affidavits* that no circumstances exist that tend to support an inference of essential ultimate fact contrary to that contended for by the movant"

and it further appears "that the conclusive effect claimed for the affidavits by the movant cannot be destroyed by cross-examination." However, in the light of subsequently decided cases we consider the dictum, "Hardly ever can a summary judgment be granted upon affidavits unless the issue raised by the pleadings undeniably depends upon documents set forth by copy in the affidavit of the moving party which are not impeached by an opposing affidavit," no longer is an accurate statement.

Inasmuch as we hold that the issue of fact raised by the pleadings with respect to the relationship Smith bore to Lea at the time of the accident is not by itself sufficient to make it improper to grant Lea's motion for summary judgment, we must, therefore, turn to the facts stated in the affidavits. A resumé of the material facts bearing on such issue of the relationship existing between Smith and Lea at the time of the accident follows.

For many years prior to the accident Lea operated an automobile garage at the village of Oregon, in Dane county, where he repaired motor vehicles for his customers, which garage was equipped with a spray booth for repainting cars. Smith and Lea had known each other for at least ten years and were good friends. During part of 1946 and the forepart of 1947 Smith had been employed in such garage by Lea, but such employment ended in the spring of 1947. After Smith left the employ of Lea he became a partner of one Roadge in operating an automobile filling station in Milwaukee, and Smith was so engaged in such business up to the time he was killed in the accident of January 25, 1952.

Approximately a year prior to the accident, Smith brought a 1939 Chevrolet automobile owned by him to Lea's garage in Oregon and repainted it there using Lea's spray booth and equipment, but Smith furnished his own paint and performed the labor. He did not offer to pay Lea for the use of the booth and equipment and Lea made no charge for the

same. Lea was injured on December 17, 1951, and was away from his place of business until January 23, 1952. On going to his garage that day he found Smith at work painting a Pontiac car which was owned by an employee of Smith's and Roadge's filling station in Milwaukee. Smith had not asked Lea's permission to use Lea's premises or equipment for such purpose and nothing was said between them about Smith paying for such privilege.

Smith went back to Milwaukee and on January 24, 1952, returned with a Cadillac and proceeded to weld a fender on it and paint it in Lea's garage. This was the car that Smith was driving at the time he met his death on January 25, 1952. Lea, at the time it was being painted, did not know who the owner of the Cadillac was. The owner, one Powell, a resident of the city of Milwaukee, had brought it to the Roadge and Smith filling station to have it painted and some welding repairs made to its body for an agreed cost of $100. Smith again made no offer to compensate Lea for the use of the latter's premises or equipment.

Among the motion papers presented to the trial court on the application for summary judgment was an affidavit of Lea, a portion of his adverse examination, and copies of two signed statements Lea had given subsequent to the accident, one being to Aetna and the other to an attorney representing one of the injured plaintiffs. The respondents place great stress upon certain minor discrepancies appearing in these four versions of the facts as stated or testified to by Lea. An assertion was made in one of the statements that Lea made no charge to Smith for the use of Lea's premises and equipment in repairing and painting the Cadillac, while Lea in his adverse examination testified that "in one way or other" Lea expected Smith "to make it right" with Lea. In the statement given by Lea to the attorney for one of the plaintiffs, Smith is reported to have told Lea he (Smith) "would see" Lea "next week," which is subject to the in-

ference that Smith might in some way compensate Lea for the use of Lea's premises and equipment in repairing and painting the Cadillac. However, even if Smith had agreed to pay Lea for the use of the premises and equipment, this would not have established any relationship between the two of employee and employer, agent and principal, or partnership.

Counsel for respondents urge that it would be improper to grant Lea's motion for summary judgment because it would deny them the right to cross-examine Lea on the issue of the relationship which existed between him and Smith. In the recent cases of *Vlasis v. Cheese Makers Mut. Casualty Co.* (1955), 268 Wis. 389, 68 N. W. (2d) 23, and *Putman v. Deinhamer* (1953), 265 Wis. 307, 61 N. W. (2d) 319, this court did stress the right of cross-examination as a ground for denying summary judgment. However, in both of those cases the defendant insurance companies, which had moved for summary judgment, were relying on policy defenses to escape liability as to which the burden of proof was on themselves. In the instant case the burden of proof to establish that Smith at the time of the accident was an employee, agent, or partner of Lea was upon the plaintiffs, and not upon Lea to disprove such a relationship.

The plaintiffs have had an opportunity to obtain a signed statement from Lea and have taken his adverse examination. If plaintiffs are to succeed in their endeavor to establish an employee-employer, agent-principal, or partnership relationship between Smith and Lea at the time of the accident, it is apparent that they must do so by means of other witnesses than Lea. Even though plaintiffs' counsel might be able to shake Lea's veracity and discredit him before a jury, this still would not support a verdict against Lea. The plaintiffs have failed to point out one iota of evidence in the affidavits and papers before the trial court on the application for summary judgment, other than plaintiffs' complaints, which

would in the slightest way support any inference that Smith at the time of the accident was the employee, agent, or partner of Lea.

We, therefore, conclude that it was error not to have granted Lea's motion for summary judgment dismissing the actions as to him.

The motion for summary judgment on the part of the defendant Aetna stands on a different footing than does that of Lea. This is because Aetna, after investigating the accident and obtaining a signed statement by Lea, filed under date of March 6, 1952, an SR-21 form with the commissioner of the Wisconsin motor vehicle department under the Wisconsin Safety Responsibility Law. In such SR-21 form so filed, Aetna admitted that its garage automobile liability policy issued to Lea under date of November 20, 1951, was in effect at the time of the accident on January 25, 1952, and applied to both Lea, as owner, and Smith, as operator, of the Cadillac involved in such accident. For reasons hereinafter pointed out we consider this to be an admission against interest which constitutes evidence bearing on the question of Aetna's liability to the plaintiffs. This being so, the plaintiffs were entitled to a trial on such issue, and the learned trial court properly denied Aetna's application for summary judgment.

Wisconsin's Safety Responsibility Law is to be found in sec. 85.09 (5) to (16) (c), Stats. As this court pointed out in its opinion in *State v. Stehlek* (1953), 262 Wis. 642, 56 N. W. (2d) 514, all forty-eight states have some type of safety-financial-responsibility law relating to the operation of motor vehicles, and forty-one states have substantially the same Safety Responsibility Act as Wisconsin does. Our Safety Responsibility Law is not to be confused with our Financial Responsibility Law found in sec. 85.09 (17) to (29). The objective of the former is to see that damages to others incurred in *a past accident* occurring through the

negligence of an operator of a motor vehicle are compensated for as a condition for not suspending the driver's license and the vehicle registration, while the purpose of the latter act is to provide a method of compensating for the damages that may result from *future accidents* as a condition for re-issuing a license previously revoked.

For the purposes of the instant action, the important provisions of the Wisconsin Safety Responsibility Law are as follows: Within sixty days after receipt of a report of a motor vehicle accident resulting in bodily injury or death, or damage to the property of another in excess of $100, the commissioner of the Wisconsin motor vehicle department, subject to certain exceptions, shall suspend the driver's license of each operator, and the registrations of the vehicles involved, unless the operator or owner, or both, deposit security with the commissioner sufficient in the judgment of the commissioner to satisfy any judgment for damages resulting from such accident as may be recovered from the operator (sec. 85.09 (5) (a), Stats.). The only statutory exception material to the instant case is the one which provides that the foregoing provision shall not apply to an owner or operator who had in effect an automobile liability policy of insurance applicable to the motor vehicle involved in the accident, which policy and the company issuing the same meet certain statutory requirements (sec. 85.09 (5) (b) and (c)). The insurance company which has issued such a policy is required upon receipt of notice of such an accident to "furnish for filing with the commissioner a written notice that such policy . . . was in effect at the time of such accident" (sec. 85.09 (5) (d)).

Sec. 85.09 (2), Stats., which is applicable both to the Safety Responsibility and Financial Responsibility Acts, makes it the duty of the commissioner to administer both acts, and authorizes him to make rules and regulations for carrying them out. Pursuant to such subsection, the commis-

sioner has required that automobile liability insurance companies which seek to comply with the requirements of sec. 85.09 (5) (d), by filing a notice of insurance coverage as to a past-reported accident, do so on a prescribed standard form designated as an "SR-21." The letters "SR" obviously stand for "safety responsibility." Such official SR-21 form contains the following two questions which must be answered by the company filing the same:

"Does this policy apply to the above owner in above accident?"

"Does this policy apply to the above operator in above accident?"

Aetna, in the completed SR-21 form filed by it with the commissioner on March 6, 1952, answered both questions "Yes." Prior to filing such SR-21, Aetna had obtained a signed statement from Lea dated February 28, 1952, setting forth essential facts relative to the use which Smith had made of Lea's premises and equipment without charge in painting the Chevrolet, Pontiac, and Cadillac automobiles, that have been hereinbefore set forth in this opinion.

Such SR-21 form was signed in behalf of Aetna by one Alice Teresinske. No affidavit from her was filed in behalf of Aetna in support of its motion for summary judgment, although affidavits were filed by one McGinn, an employee in Aetna's Milwaukee office, and by one Narum, another employee who had obtained the signed statement from Lea. These affidavits, and particularly the two made by McGinn, claim that the SR-21 form was filed by mistake. However, none of these affidavits state directly that Alice Teresinske did not have authority to sign and file such SR-21 form in behalf of Aetna.

Sec. 85.09 (11), Stats., expressly provides:

"Neither the report required by subsection (4), the action taken by the commissioner pursuant to this section, the findings, if any, of the commissioner upon which such action is

based, nor the security filed as provided in this section shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages. *This subsection shall not be construed as excluding a notice of insurance filed under subsection (5) (d) from being admissible in evidence where it would otherwise be material and admissible under the rules of evidence."* (Italics supplied.)

We consider that the last sentence of the above-quoted subsection clearly recognizes that an SR-21 form may be admissible as an admission against interest on the part of the company which has filed the same.

The respondents contend that the filing of an SR-21 form constitutes more than a mere admission against interest on the issue of Aetna's liability to the plaintiffs after the lapse of the sixty-day period accorded to the commissioner to revoke the driver's license and vehicle registration, on the ground that it then becomes conclusive on such issue and any evidence that the same had been filed due to a mistake, even under circumstances where no coverage existed, would be immaterial and inadmissible. Although this issue was raised in the trial court, that court refrained from deciding the same. It necessarily is a point of great importance because of the thousands of such SR-21s which each year are filed with the commissioner. We prefer not to pass upon it without having the benefit of a decision of the trial court, especially where it is not necessary for us to do so in order to decide the appeal.

We confine our determination at this time to holding that an automobile liability insurance company can make itself liable on a policy issued by it where, after investigating the facts, it, acting through a duly authorized agent or employee, voluntarily files with the commissioner an SR-21 form admitting coverage as to the accident described in such SR-21 intending to be bound thereby, even though without the

filing of the SR-21 there might not be liability. Whether Aetna did, or did not, do so in this instance presents an issue of fact as to which the plaintiffs are entitled to have a trial. The affidavits filed in behalf of Aetna are insufficient to dispose of such issue as a matter of law for the reasons hereinbefore pointed out.

*By the Court.*——The orders appealed from with respect to the appellant Aetna Casualty & Surety Company are affirmed; the orders appealed from with respect to the appellant Tester H. Lea are reversed, and the cause remanded with directions to enter summary judgment dismissing all complaints, cross complaints, and counterclaims as to him.

GEHL, J. (*dissenting in part*). The parties agree and the court holds that no liability on the part of Aetna to the plaintiff can be traced to the contract between Aetna and Lea. It is clear from the opinion of the majority that if there is such liability, it was created by the filing of the SR-21, which filing must, under the circumstances, be held to have been made by mistake, and certainly with no intention on the part of Aetna to assume a responsibility which had not existed. It is not claimed by the plaintiff nor by the majority of the court that plaintiffs changed their position in reliance upon the presence in the office of the commissioner of motor vehicles of the SR-21, or that Aetna is estopped to deny liability.

I am unable to agree that when we are unable to find that the parties have voluntarily and mutually agreed upon a contract, we create one for them.

I am authorized to state that Mr. Justice STEINLE joins in this dissent.