PRISUDA, by Guardian *ad litem,* and others, Respondents, vs. GENERAL CASUALTY COMPANY OF AMERICA, Appellant.

*January 10—February 7, 1956.*

44

45

For the appellant there was a brief by *Dougherty, Arnold & Philipp* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondents there was a brief by *Tilton, Chudnow, Kastrul, Pulito, Keegan & Luff* of Milwaukee, and oral argument by *Aaron L. Tilton.*

STEINLE, J. The appellant, General Casualty Company of America, contends that at the time of the collision, George Rogers, the driver of the Allen car, was not an additional assured under the omnibus coverage clause of the policy. That clause reads as follows:

*"Definition of 'Insured.'* With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

"(a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station, or public parking place, with respect to any accident arising out of the operation thereof;

"(b) to any employee with respect to injury to or sickness, disease, or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Sec. 204.30 (3), Stats., in force at the time in question, read:

"No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision

reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy. Such indemnity shall also extend to any person, firm, or corporation legally responsible for the operation of such automobile. The insurance hereby afforded shall not apply unless the riding, use, or operation above referred to be with the permission of the assured named in this policy, or if such assured is an individual, with the permission of an adult member of such assured's household other than a chauffeur or domestic servant; provided, however, that no insurance afforded by this paragraph shall apply to a public automobile garage or an automobile repair shop, sales agency, service station, and/or the agents or employees thereof. In the event an automobile covered by this policy is sold or transferred the purchaser or transferee shall not be an additional insured without consent of the company, indorsed hereon."

The coverage under the policy is broader than that required by the statute. While an insurer by its contract may not restrict the coverage to less than that required by statute, *Olander v. Klapprote* (1953), 263 Wis. 463, 57 N. W. (2d) 734, nevertheless it may increase or broaden the protection over the statutory requirement. *Schimke v. Mutual Automobile Ins. Co.* (1954), 266 Wis. 517, 64 N. W. (2d) 195. The statute provides that the insurance afforded by the contract shall not apply to a person other than a named assured unless the riding, use, or operation of the automobile is with the permission of the named assured. The policy in question affords protection to any person while using the vehicle or legally responsible for its use, provided the actual use is by the named assured or with his permission. A distinction is recognized in this state between the words "use" and "operate." In *Schimke v. Mutual Automobile Ins. Co., supra,* the court cited with approval *Maurer v. Fesing* (1940), 233

Wis. 565, 290 N. W. 191, where in substance, at page 571, it was held that the consent which is required under the provisions of a policy is not to the operation of the car by the person to whom the coverage benefits are claimed to inure, but is merely to its being used with the consent of the named insured at the time in question.

We subscribe to the observation in *Brown v. Kennedy* (Ohio App. 1942), 49 N. E. (2d) 417, 418:

"The general rule is, that language used in a policy of insurance being selected by the insurer should be construed most favorably to the insured, giving the language used its fair and reasonable meaning. 5 Am. Jur. 806, section 534; Couch on Insurance, section 1175, vol. 5, p. 4175; 22 Ohio Juris. 339, 340, sections 184, 185; *Duncan v. John Hancock Mut. Life Ins. Co.* 137 Ohio St. 441, 445, 31 N. E. (2d) 88.

"This rule as applied to a case where the insurer claims a limited interpretation of the terms 'use' or 'using' would seem to mean that where the terms 'use' or 'using' are employed in the policy, and there are included within their fair definition and interpretation words or meanings which would attach liability or defeat it, the terms employed should be given the recognized fair and reasonable meaning which causes liability under the policy to attach.

"In the instant case the terms in question are 'use' and 'using.' Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed the word 'used' includes the term 'operated'—then the insurer should have employed the word carrying in its meaning the narrower limitation of liability."

In the case at bar it is uncontroverted and it was found that the permission granted by the named assured, Lucille Minnihan Allen to the use of the car by the son, William, was coupled with the direction that the son was not to let anyone else drive the car on the trip. It was the right of the mother to have consented to the use of the car by the son, or

to have refused such permission. Her consent was to a restricted use rather than to an all-comprehensive one. Since it was within her right to refuse permission, it cannot be held that she did not have the power to grant permission on a limited basis. The permission of the use of the car to the son was upon condition that in its use by him, only he would operate it. The mother was entitled to restrict the use in such manner. Had she not by her direction restricted the use, then, under the authorities cited above, the son's delegation of the driving to George Rogers would have brought Rogers within the purview of the protection provided by the insurance policy. However, since Rogers' driving of the car was outside the use of it as permitted to William Allen by his mother, in other words, since the use to which the car was put by the permittee was not in conformity with that permitted by the named assured, we are compelled to determine that the coverage of the policy did not extend to Rogers when he drove the car at the time in question.

Respondents contend that an emergency situation was created when William found himself tired and nervous and requested Rogers to drive before the party left Pewaukee, and that hence the consent of Mrs. Allen to permit George Rogers to drive, was implied from the circumstances. The court determined that William Allen had requested George Rogers to drive because he was too tired. That finding was based upon credible evidence. Respondents urge that the situation, while not one of principal and agent, nevertheless is analogous in principle to such relationship, and that the rules applicable to agency by emergency or necessity ought to control here. They submit that the unforeseen emergency reasonably enlarged the existing authority conferred by Mrs. Allen upon her son. However, it must be borne in mind, that under the law of agency, it is the principal's purpose and plans that are to be subserved, and he is the one to decide, where possible, how the emergency is to be met. If it is possible to

communicate with the principal when emergency arises, it is the duty of the agent to do so in order that the principal's advice or direction can be obtained. 1 Mechem, Agency (2d ed.), p. 507, sec. 718. In the present circumstances, were it to be considered that an emergency had been created, Mrs. Allen would have been entitled to have been notified of it in order that her direction could be obtained. It does not appear that any effort was made to communicate with her or that it was impossible to do so. The proof falls short of establishing implied consent because of emergency.

The driving of the car by Rogers was without the express or implied consent of the named assured, and hence was not within the protection of the policy.

At the trial, counsel for plaintiffs offered in evidence a certified copy of the SR–21 form as filed by the defendant Insurance Company with the motor vehicle department. The court ruled that the exhibit was inadmissible for the reason that it is in the nature of a statement of financial responsibility and does not alter the terms of the insurance contract. Subsequent to the trial court's rendition of the judgment herein, this court in *Laughnan v. Griffiths* (1955), 271 Wis. 247, 73 N. W. (2d) 587, determined that an automobile liability insurance company can make itself liable on a policy issued by it, where, after investigating the facts, it, acting through a duly authorized agent or employee, voluntarily files with the commissioner of the motor vehicle department an SR–21 form admitting coverage as to the accident described in such SR–21, intending to be bound thereby, even though without the filing of the SR–21 it might not be liable. In the *Laughnan Case* it was determined that an SR–21 may be admissible against interest on the part of the company which has filed the same. (The writer of this opinion joined in the dissent from the majority decision in the *Laughnan Case* and still is of the same view as expressed in the dissenting opinion there.)

If, in the instant situation, the court in accordance with the rule in the *Laughnan Case* had determined upon the basis of credible evidence that the company had investigated the facts and had acted through a duly authorized agent or employee in voluntarily filing the SR–21 form and that the company intended to be bound by such filing, then the SR–21 form offered in evidence as an exhibit, would have been admissible as against interest. The failure of the court to have made determination with respect to such considerations, constituted reversible error. The plaintiffs-respondents are entitled to a new trial upon appropriate pleadings with respect to the issue as to whether the Insurance Company acknowledged and assumed liability for Rogers' driving of the Allen car when it filed the SR–21 report.

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with the opinion herein.

GEHL, J. (*concurring*). One of the rules of this case is fixed by *Laughnan v. Griffiths* (1955), 271 Wis. 247, 73 N. W. (2d) 587, and for that reason alone I concur in the court's opinion. I consider, however, that I should call attention to the fact that in the former case we suggested and have now made it quite clear that it is possible for a jury, as well as the court, to supply the missing contract. It remains only for the trial court, when the issue is submitted to a jury, to devise the means of ascertaining by the jury's verdict what the terms of that contract are.

CURRIE, J. (*concurring*). While I concur in the opinion of the court in this case, I am fearful that as such opinion now stands there is a possibility of the trial court being misled as to the issues to be tried out in the new trial with respect to the legal effect to be accorded filing of the SR–21. That to which I have particular reference are the words *"intending to be bound thereby"* which the opinion quotes from

our decision in *Laughnan v. Griffiths* (1955), 271 Wis. 247, 259, 73 N. W. (2d) 587. It will be recalled that in the *Laughnan Case* we were concerned with an allegation on the part of the Insurance Company that it had filed the SR–21 by mistake, and the above-quoted words had direct reference to such issue of mistake.

The Safety Responsibility Law and not the secret intention of the Insurance Company, which has voluntarily filed an SR–21, must govern the legal effect of such filing. The words *"intending to be bound thereby"* of the *Laughnan Case* should be interpreted as meaning no more than that the company files the SR–21 for the purpose of complying with the provisions of sec. 85.09 (5) (d), Stats. A mistaken idea of what the legal consequences are which may result from such filing will not relieve it from liability. Such is not the type of mistake with which we were dealing in the *Laughnan Case*.

I cannot agree with the statement made by Mr. Justice GEHL in his concurring opinion that any jury issue is presented in a case of this kind as to what the contract of insurance is. That is always a matter of law for the court to determine. The jury issues with respect to the filing of the SR–21 in the instant case will be limited to whether the same was filed voluntarily with intent to comply with sec. 85.09 (5) (d), Stats., and whether the person filing the same in behalf of the Insurance Company had actual or ostensible authority to file the SR–21.