Henthorn, Respondent, vs. M. G. C. Corporation and another, Appellants.

*May 7—June 4, 1957.*

For the appellant M. G. C. Corporation there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers*.

For the appellant London & Lancashire Indemnity Company of America there were briefs by *Schubring, Ryan, Petersen & Sutherland* of Madison, and *Richard Pfeil* of Elkhorn, and oral argument by *Mr. R. J. Sutherland* and *Mr. Pfeil*.

For the respondent there was a brief by *Rieser, Mathys, McNamara & Stafford* of Madison, and by *Bosshard & Arneson* of La Crosse, and oral argument by *Clifford G. Mathys* and *Philip Arneson*.

CURRIE, J. The following issues are raised on this appeal:

(1) Is there any credible evidence to sustain the jury's finding of causal negligence on the part of Hollis, driver of the M. G. C. unit?

(2) Was the plaintiff Henthorn causally negligent as a matter of law?

(3) Did the trial court err in refusing to submit a question as to Henthorn's management and control?

(4) Did the trial court err in excluding certain expert testimony offered by defendants?

(5) Did the filing of an SR-21 by defendant Insurance Company make it liable upon its policy to the extent of the limits of such policy?

In order to pass on the first three of the above five issues it is necessary to review the pertinent evidence bearing on how the accident occurred. In view of the fact that the plaintiff won a verdict below we must consider such evidence from the standpoint most favorable to the plaintiff. *Zang v. Schumann* (1952), 262 Wis. 570, 574, 55 N. W. (2d) 864.

At the point where the accident occurred the highway had a 22-foot-wide black-top pavement with soft, muddy shoulders approximately five to six feet in width. Beyond such shoulders was a shallow ditch. The highway here was straight and comparatively level and ran in a generally northerly and southerly direction. All witnesses testified to the bad driving conditions which prevailed that night as there was a fog and slippery pavement. Henthorn conceded that the fog made it treacherous driving although he testified that the fog was in patches and that back one mile and a half from the scene of the accident he had been able to see two vehicles parked at the side of the road when 250 feet distant from them. Several witnesses testified as to the pavement being covered with ice, including the deputy sheriff who arrived at the scene of the accident shortly after it occurred. Henthorn stated that he did not know whether the pavement was icy but admitted that at least it was wet and slippery. The heavy tractor-trailer unit operated by Henthorn was loaded with 29,000 pounds of steel.

As Henthorn approached the scene of the accident he saw a dark object blocking both the north and south traffic lanes of the pavement which looked to him like a barn. He immediately applied his foot brakes and then his hand brake and turned his unit to the right off the pavement and proceeded northerly with the left wheels on the shoulder and the right wheels in the shallow ditch. Before the collision oc-

curred he recognized the object that he had sighted as being the left side of a trailer but did not see the tractor portion of the M. G. C. unit. Henthorn thought that some part of his unit back of the front of the cab near the gas tank had "hooked" the right rear corner of the M. G. C. trailer as it protruded onto the shoulder. However, the physical damage to the Briggs tractor disclosed that it was the left front of the Briggs tractor which struck the other unit. The Briggs tractor came to rest with the right portion of the tractor bumper up against a tree near the highway east fence line. Henthorn had been thrown out the left front door of the cab and was lying on the ground close to the rear of his unit. Hollis had also been thrown from the cab of the M. G. C. unit and was lying just to the rear of the upset M. G. C. trailer. He was fatally injured and died within a few minutes.

Parallel skid marks made by the tires of the Briggs unit were found extending back southward from the front axel of the tractor 188 feet. The south end of these marks began in the northbound, or east, traffic lane of the pavement and extended northerly on the pavement for a distance of 15 feet. Then they veered sharply to the right, or east, off the pavement, and then extended northward up to the rear of the unit, the left marks being on the shoulder and the right ones in the ditch. The south 15 feet of such marks had been burned through the ice coating of the pavement.

Henthorn estimated that he had proceeded with the left wheels of his unit on the shoulder and the right wheels in the ditch approximately 180 feet when he struck the M. G. C. unit. There was no debris nor any marks on the shoulder to indicate such point of contact. It was defendants' theory that the point of impact occurred where the tire marks from the Briggs unit veered sharply off the pavement after proceeding northerly for a distance of 15 feet. Broken pieces of a mirror were found at such point, and after the accident

it was discovered that the mirror located on the left side of the Briggs tractor cab had been broken. However, there was no identification of the broken pieces of the mirror lying on the pavement as having come from the broken mirror of the Briggs unit. It is undisputed that the right rear corner of the M. G. C. tractor was pushed forward five inches. In fact, the whole section along the right side of such trailer, which section was reinforced with heavy steel crosspieces, was pushed forward five inches, as was the fifth wheel of the trailer near the point where it was attached to the tractor. After the accident it was found that the shift lever of the M. G. C. unit's transmission was set in low gear and the ignition key turned off. There were no marks on the pavement to show that the unit had skidded prior to the collision. The testimony discloses no explanation of how the unit happened to be in the position crosswise on the highway which Henthorn testified it was at the time he first sighted it. Henthorn was positive that it was then stationary and not moving.

The defendants contend that because there is no evidence as to how the M. G. C. unit got in the position it was when first sighted by Henthorn, and how long it had been there, there is no evidence to support the finding that Hollis was negligent with respect to stopping his tractor-trailer on the highway. Furthermore, they point out that Hollis, as a deceased driver, is entitled to the presumption that he exercised due care. Sec. 85.19 (1), Stats., makes it illegal for anyone to stop a motor vehicle on a highway, as was the M. G. C. unit. Sub. (8) of sec. 85.19 makes such prohibition inapplicable to a disabled vehicle. Defendants urge that it is possible that the M. G. C. unit skidded on the icy pavement without fault of Hollis, and thereby got into the position where it could not be moved forward or backward, even though there was no mechanical failure.

We deem that this is a proper case in which to invoke the principle of *res ipsa loquitur* as to whether there was negligence on the part of Hollis in stopping his unit where he did, accepting Henthorn's testimony as being true. In *Wood v. Indemnity Ins. Co.* (1956), 273 Wis. 93, 102, 76 N. W. (2d) 610, this court stated:

"We are constrained to hold that in a situation where it ordinarily would be permissible to invoke the rule of *res ipsa loquitur,* such as the unexplained departure from the traveled portion of the highway by a motor vehicle, resort to such rule is not rendered improper merely by the introduction of inconclusive evidence giving rise to an inference that such departure may have been due to something other than the negligence of the operator."

We are unable to distinguish an unexplained stopping of a motor vehicle on a highway from an unexplained departure from the highway. If *res ipsa loquitur* is applicable to one situation it ought to be equally applicable to the other. The presumption that a deceased driver exercised due care is not in itself evidence, but the fact or facts giving rise to invocation of the doctrine of *res ipsa loquitur* is evidence, although circumstantial in nature. If there is any evidence to go to the jury on an issue of negligence as to a deceased driver, then the presumption that he exercised due care passes out of the picture. *Kreft v. Charles* (1954), 268 Wis. 44, 52, 66 N. W. (2d) 618, and *Atkinson v. Huber* (1955), 268 Wis. 615, 618, 68 N. W. (2d) 447.

The burden of proof to establish that the M. G. C. unit was a disabled vehicle under the provisions of sec. 85.19 (8), Stats., was on the defendants. The evidence upon which they rely to establish that it was is inconclusive at best. Certainly it cannot be held as a matter of law that it was a disabled vehicle within the meaning of the statute.

We are, therefore, constrained to hold that we cannot disturb the jury's finding that Hollis was negligent with respect to stopping on the roadway.

Henthorn testified that before the collision he did not see the tractor of the M. G. C. unit nor the rear of the trailer. The evidence is in conflict on the issue of whether there were any lighted clearance lights on the left side of such trailer just prior to the collision. No useful purpose would be served in reviewing such evidence. We have carefully considered all of the testimony bearing on such question and conclude that a jury issue was presented as to it.

We now turn to the question of whether the plaintiff Henthorn was guilty of causal negligence as a matter of law. It is our conclusion that he was with respect to the speed at which he was traveling at the time he first sighted the M. G. C. trailer. In *Reuhl v. Uszler* (1949), 255 Wis. 516, 522, 39 N. W. (2d) 444, this court stated:

"Independent of statute, when the view of the driver of an automobile is obstructed, whether by reason of a grade or otherwise, the speed of the car should be so reduced that the car can be stopped within the distance the driver can see ahead. See *Zigler v. Kinney* (1947), 250 Wis. 338, 27 N. W. (2d) 433, and *Lauson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629."

We find it unnecessary to decide whether a condition of patches or pockets of fog interspersed with intervals of fairly good visibility, as testified to by Henthorn, standing alone would be sufficient to invoke the above rule. We have no hesitancy in holding that the additional circumstances of a slippery pavement and extremely heavy load made it incumbent upon Henthorn to travel at such a speed that he could stop within the distance he could see ahead. That he did not do so is apparent from the following testimony given by him on his adverse examination:

"*Q.* Did you see this vehicle that your truck collided with before the collision? *A.* Yes, I did.

"*Q.* And what did you do when you saw it? *A.* I put on the brakes and tried to stop, *and being I was loaded heavy I couldn't, so I took for the ditch.*" (Italics supplied.)

We do not consider that such quoted testimony as to inability to stop was qualified by his subsequent testimony at the trial that he did not know in what distance he could have brought his unit to a stop under the conditions prevailing at the scene of the accident, and that he "didn't think too much about stopping,—my object was to get by him."

Counsel for the plaintiff cite *Vidakovic v. Campbell* (1956), 274 Wis. 168, 79 N. W. (2d) 806, as authority supporting their contention that he cannot be held negligent as to speed. However, one fact which distinguishes that case from the instant one is that there the jury found the plaintiff guilty of negligence as to lookout while here Henthorn was absolved of any negligence with respect to lookout.

Because of our conclusion that the jury could not properly absolve Henthorn from negligence as to both lookout and speed it is necessary that the judgment be reversed, and the cause be remanded for a new trial.

The trial court refused defendants' request to include questions in the special verdict inquiring as to whether Henthorn was causally negligent as to management and control. The basis of such refusal was the fear that there might be a duplicitous verdict if this was done. Under our decisions in *Robinson v. Briggs Transportation Co.* (1956), 272 Wis. 448, 76 N. W. (2d) 294, and *Dahl v. Harwood* (1953), 263 Wis. 1, 56 N. W. (2d) 557, we are satisfied that no duplicity would have resulted by submitting questions on such issue to the jury. When a driver is confronted with some person or object invading his lane of travel, proper management and control may require turning so as to avoid striking such person or object instead of merely attempting

to stop. According to Henthorn's own testimony he had at least 180 feet in which to maneuver. If the evidence at the new trial is substantially the same on this issue as was presented at the first trial, the special verdict should inquire as to whether Henthorn was causally negligent as to management and control.

The defendants produced one Vik as a witness who is a graduate civil engineer with much experience in the field of traffic matters, including reconstructing accidents from the physical facts. Objections to most of the questions asked of this expert witness were sustained by the trial court on the ground that they invaded the province of the jury. This is a field in which trial courts are permitted to exercise fairly wide discretion. *Anderson v. Eggert* (1940), 234 Wis. 348, 359, 291 N. W. 365. We do not consider it would be error to permit a qualified expert, such as Vik, to state his opinion as to the position of the two units at the time of impact based upon such facts as damage to the vehicles, position of the units after the accident, and marks, or absence of marks, on the pavement and shoulders.

However, we hold that the trial court did commit error in refusing to permit such expert witness to testify to such matters as the average reaction time which is required to apply brakes; time lag between the application of brakes of a tractor-trailer unit, such as the Briggs unit, and the brakes becoming effective; and the distance required to stop such unit on a dry level pavement going at a speed of 35 miles per hour. It is common knowledge that it takes less time to stop a motor vehicle on a dry pavement than a slippery one. Therefore, testimony as to the distance required to stop a unit, such as the Briggs unit, on a dry level pavement at a speed of 35 miles per hour would be relevant if such distance was greater than Henthorn had available when he first sighted the M. G. C. unit.

The last issue to be passed upon is the legal effect of the filing of the SR-21 by the defendant Insurance Company with the commissioner of motor vehicles with respect to the policy defense raised by its answer. The policy of automobile liability insurance issued to M. G. C. Corporation contained an exclusion clause which provided that, in the event an insured tractor is used for towing a trailer not covered by the policy, the policy shall not apply. The M. G. C. tractor involved in the accident was covered by the policy but not the trailer. It was stipulated that the SR-21 was filed by the defendant Insurance Company after it had made an investigation of the facts of the accident; that it was filed by a person having authority so to do; and that it was filed with the intention that the Insurance Company would be bound thereby to the extent that the law required it to be bound.

The thorough memorandum opinion of the learned trial judge analyzed the problem presented with respect to the SR-21 issue and cited the cases of *Laughnan v. Griffiths* (1955), 271 Wis. 247, 73 N. W. (2d) 587, and *Prisuda v. General Casualty Co.* (1956), 272 Wis. 41, 74 N. W. (2d) 777. We are completely in accord with the conclusion reached by the trial judge and quote from it as follows:

"It is true that in the *Laughnan Case* and in the *Prisuda Case* the court has said that the filing of an SR-21 under the circumstances detailed in those opinions is an admission against interest. While the court has not said so the indications are that it is to be a conclusive admission if filed voluntarily with intent to be bound and after due investigation. . . .

"It would seem to me that the conclusion to be drawn from the decisions is that the filing of the SR-21 is construed to say in effect that the Insurance Company has an enforceable policy of insurance to cover and protect both the owner and operator to the extent of paying damages *within the limits of the policy* if a tort liability is proved. It is in that sense that the Insurance Company makes an admission against its interests." (Emphasis ours.)

The analysis made and conclusion reached by the trial court in such memorandum opinion is the same as this court later enunciated in *Behringer v. State Farm Mut. Automobile Ins. Co.* (1957), 275 Wis. 586, 82 N. W. (2d) 915.

In the instant case the policy limits exceeded those of $5,000/$10,000 for bodily injury stated on the filed SR-21. The trial court rightfully determined that the limits of the defendant Insurance Company's liability were the limits of its own policy referred to in the SR-21. For a discussion of this point, see our opinion in *Laughnan v. Aetna Casualty & Surety Co.,* ante, p. 113, 83 N. W. (2d) 747.

Defendants also contend that the provisions of sec. 85.09 (5) (d) of the Wisconsin Safety Responsibility Law are unconstitutional, if construed in the manner determined by the trial court, because it is urged that the Insurance Company would thereby be deprived of its property without due process of law. Such argument is entirely without merit. *Prisuda v. General Casualty Co.,* ante, p. 166, 83 N. W. (2d) 739.

*By the Court.*—Judgment reversed, and cause remanded for a new trial not inconsistent with this opinion.

(*Dissent.*) STEINLE and WINGERT, JJ., dissent from that part of the decision which holds that the limit of the liability of the defendant Insurance Company for plaintiff's injuries is more than the $5,000 limit required by sec. 85.09 (5) (c), Stats. 1951. See dissenting opinion in *Laughnan v. Aetna Casualty & Surety Co.,* ante, p. 113, 83 N. W. (2d) 747.