AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Respondent, v. OSUSKY, and others, Defendants-Respondents: SECURITY MUTUAL CASUALTY COMPANY, Defendant-Appellant.

Court of Appeals

*No. 78–238. Submitted on briefs March 20, 1979.—*
*Decided April 30, 1979.*
(Also reported in 279 N.W.2d 719.)

For the defendant-appellant the cause was submitted on the briefs of *Eric J. Van Vugt* of *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, Wisconsin.

For the plaintiff-respondent the cause was submitted on the briefs of *James F. Eldridge* of Milwaukee, Wisconsin.

Before Decker, C.J., Cannon, P.J., and Moser, J.

MOSER, J. On February 16, 1976, an automobile driven by Deborah Osusky collided with a parked car, causing damages to the latter car in the amount of $1,760.25. The automobile driven by Deborah was owned by Shirley Peterson, whose minor son, Jeffrey, was a passenger at the time of the accident. The auto was insured under an automobile liability policy issued to Shirley Peterson by Security Mutual Casualty Company (Security), the defendant-appellant.

Ms. Peterson bought the car on about December 23, 1975. The car was titled, registered and insured in her

name only. She also owned another car. Shirley and Jeffrey Peterson were the only licensed drivers in the Peterson household. On either December 25 or December 26, 1975, Jeffrey was given the license plates to the recently purchased car, as a combination Christmas-birthday present. A portion of the purchase price of the car was Shirley Peterson's gift to her son. The remainder of the purchase price was to be repaid from Jeffrey's part-time wages.

The car was not operated until it was insured by Security on January 15, 1976. Shirley Peterson kept both sets of car keys in her purse. Jeffrey was required to obtain Shirley's permission each time he wished to use the car. When permission was not given, Jeffrey did not use the car but had to use public transportation.

Shirley Peterson had expressly forbidden Jeffrey from allowing anyone else to drive the car, on one occasion specifically prohibiting Jeffrey from allowing Deborah Osusky to drive the car. To Shirley Peterson's knowledge, prior to the accident only she and Jeffrey had ever driven the car.

On February 16, 1976, Jeffrey received permission from Shirley Peterson to drive the car and received a set of car keys from her. Jeffrey picked up Deborah Osusky from her home at 6:30 p.m. and drove around in Milwaukee until about 10 p.m., when Jeffrey injured his arm in an unrelated accident involving another car. Deborah Osusky then began driving the Peterson car with Jeffrey as her passenger. She continued to drive until about 11:55 p.m., when the accident in issue here occurred.

The plaintiff is the subrogated insurer of the parked car struck by the Peterson's car while Deborah Osusky was driving it. The damages were stipulated to be $1760.-25. Following a trial to the court on the coverage issues, the trial court entered findings of fact which are not challenged by Security and which in pertinent part stated

that Shirley Peterson, the owner of the car, did not give Deborah Osusky permission to drive the car, but did give Jeffrey permission to do so; that Jeffrey gave Deborah Osusky permission to drive the car; that Jeffrey knew that no one else, including Deborah Osusky, was allowed to drive the car; that Jeffrey knew he was not to allow anyone else to drive the car; that no emergency situation existed making it necessary for Deborah Osusky to drive the car; that Security issued a policy to Shirley Peterson, which policy was in full force and effect at the time of the accident.

In its memorandum decision, the trial court modified its findings of fact "to reflect that Jeffrey Peterson was a co-owner of the" car at the time of the accident. Based on this modification, the trial court found "that Deborah Osusky had the implied permission of Shirley Peterson, the named insured of defendant Security Mutual Casualty Company, to drive the automobile in question." Judgment was entered in favor of the plaintiff against Deborah Osusky, Shirley Osusky, (Deborah's mother who had sponsored Deborah for her driver's license), and Security. Judgment was entered dismissing the complaint and cross complaints against Milwaukee Mutual Insurance Company, insurer of Shirley Osusky.

The only issue raised on this appeal is whether the trial court's finding that Jeffrey Peterson was a co-owner of the car is a sufficient basis for the trial court's legal conclusion that Deborah Osusky had Shirley Peterson's implied permission to drive the car.

It is undisputed that Shirley Peterson did not give her express permission to Deborah Osusky to drive the car. Express permission of either the named insured or an *adult* member of the named insured's household will extend liability coverage to the permittee. Sec. 632.32(2)(b), Stats. The Wisconsin endorsement on Shirley Peterson's policy issued by Security complied with the

requirements of the omnibus statute. It is also undisputed that Jeffrey Peterson was a minor on the day of the accident.

Our supreme court has extended coverage under the omnibus statute in four limited situations: (1) emergency;[1] (2) absence of express prohibition;[2] (3) actual knowledge;[3] and (4) actual ownership. We agree with the trial court that this particular case on its facts does not fit into any of the first three categories. We disagree with the trial court's finding that the case fits into the fourth category of actual ownership.

As a general rule, where the first permittee is for all practical purposes the real owner of the car, although the car is titled, registered, and insured in the name of another for reasons of economy and convenience, and the first permittee grants permission to a third party to drive

---

[1] In *Prisuda v. General Casualty Co.*, 272 Wis. 41, 74 N.W.2d 777 (1956), (Gehl and Currie, JJ., concurring), the court found that a real emergency situation did not exist, and the court held that, where possible, the permittee should communicate with the named insured in order that the latter decide how to meet the emergency. *Prisuda, supra*, at 50–51, 74 N.W.2d at 782. In *Bauer v. Hardware Mutual Casualty Co.*, 13 Wis.2d 21, 108 N.W.2d 271 (1961), the court again found that no real emergency existed. The driver of the car parked it in a no parking area and left the motor running after she exited. After the passenger was told by the police that the car was illegally parked, the passenger drove it away and became involved in an accident. In neither *Prisuda* nor *Bauer* was there either express or implied permission.

[2] In *Krebsbach v. Miller*, 22 Wis.2d 171, 176, 125 N.W.2d 408, 411 (1963), the court held that implied permission will be found "when the first permittee, to whom the car was intrusted by the named insured without any express prohibition against letting another drive, retains possession of the car but turns over its operation to another while such first permittee remains an occupant of the car." [Citations and footnote omitted.]

[3] *Id.* at 177, 125 N.W.2d at 411.

the insured vehicle, permission of the named insured is implied.[4] In determining whether the first permittee is the real owner, several factors, including but not limited to those listed below, should be considered:

1. Whether the named insured considered the first permittee the actual owner;[5]
2. The restrictions, if any, imposed by the named insured on the first permittee's use of the car (limited or unfettered with respect to time, place, purpose, drivers);[6]
3. Whether the named insured knows, and does not object, that the first permittee allows others to drive the car;[7]
4. The first permittee's financial interest in the car (purchase and upkeep);[8]
5. Whether the named insured had forbidden the first permittee to allow another person to drive the car (others in general or someone else specifically named.)[9]

The trial court based its finding of implied permission of the named insured solely on the basis of the first permittee's financial interest in the car, not on the basis that Jeffrey Peterson was the real owner of the car.

[4] *Gross v. Joecks,* 72 Wis.2d 583, 592, 241 N.W.2d 727, 731 (1976); *Upton v. Tatro,* 68 Wis.2d 562, 572–73, 229 N.W.2d 691, 697 (1975); *Nordahl v. Peterson,* 68 Wis.2d 538, 550–51, 229 N.W.2d 682, 689–90 (1975).

[5] *Schimke v. Mutual Automobile Ins. Co.,* 266 Wis. 517, 522, 64 N.W.2d 195, 198 (1954).

[6] *Id; Krebsbach,* n. 2 *supra,* at 178, 125 N.W.2d at 411–12; *Bauer,* n. 1 *supra.*

[7] *Schimke,* n. 5 *supra; Krebsbach,* n. 2 *supra,* at 177, 125 N.W.2d at 411.

[8] *Prisuda,* n. 1 *supra;* Note 4, *supra.*

[9] *Prisuda,* n. 1 *supra,* at 49–50, 74 N.W.2d at 782; *Krebsbach,* n. 2 *supra,* at 176–77, 125 N.W.2d at 411.

Shirley Peterson considered herself to be the real owner of the car. Jeffrey's use of the car was restricted. He was required to request permission on each occasion he wanted to use the car. Shirley Peterson kept the keys in her possession and could deny Jeffrey's request, which she had done in the past. Shirley Peterson admonished Jeffrey not to allow anyone else to drive the car. On one occasion during the month that the car was first used prior to the accident, Shirley Peterson expressly prohibited Jeffrey from allowing Deborah Osusky to drive the car. To Shirley Peterson's knowledge, prior to the time of the accident, Jeffrey did not allow anyone else to drive the car. Jeffrey's financial interest in the car is not clearly established, although Shirley Peterson did testify that $250 of the purchase price was considered a gift to Jeffrey. It was understood by both Shirley and Jeffrey Peterson that at some time in the future after Jeffrey had demonstrated maturity and responsibility, Shirley Peterson would allow Jeffrey exclusive, unrestricted use of the car.

After consideration of all the factors listed above as applied to the specific facts and circumstances of this case, it is clear that Shirley Peterson, not Jeffrey, was the real owner of the car. As such, there is no basis for finding implied permission of the named insured based on the actual ownership exception.

The judgment of the trial court entered against Security Mutual Casualty Co. is reversed.

*By the Court.*—Judgment reversed.