# CASES DETERMINED

AT THE

## January Term, 1873.

McArthur vs. Schenck and another.

*Usury.*

1. Usury laws are designed to protect the *borrower* from being obliged to pay more than the amount limited thereby, for the loan or forbearance of money; and not to prevent the lender from receiving such excess from third parties, who voluntarily undertake to pay it.

2. A. proposes to buy of B. a farm valued at $2,500 cash, if he can borrow the money, and applies to C. therefor. C. offers, through B. as his agent, to loan the amount to A. for thirty dollars in excess of the highest legal interest; and upon A. refusing to borrow on those terms, B. agrees to pay the thirty dollars, or to accept for the land $2,470; and A. thereupon receives from C. and pays to B. the last named sum, and gives his note and mortgage to C. for $2,500, at the highest legal rate of interest. *Held*, in an action by C against A., that there is no contract on A.'s part to pay usurious interest, and that the note and mortgage are valid.

APPEAL from the Circuit Court for *Rock* County.

Action by *Henry G. McArthur* against *Cyrus Schenck* and his wife, *Mary S. Schenck*, to foreclose a mortgage for $2,500, executed by the defendants to the plaintiff, October 1st, 1869, to secure two notes of $1,250 each, made the same day by *Cyrus Schenck*, payable to plaintiff's order on the 1st of October in the years 1874 and 1875, respectively, with interest at the rate of ten per cent. payable annually.

The case made by the answer and the findings of the court

is voluminous and complicated; but the facts upon which the judgment of this court is based are few and simple, and are sufficiently stated in the first two paragraphs of the opinion.

Judgment was rendered in the circuit court for the plaintiff; and the defendants appealed.

*Williams & Sale*, with *I. C. Sloan*, of counsel, for appellants, contended that the evidence clearly showed a usurious agreement between the defendants and the plaintiff, which rendered the notes and mortgage void, and it made no difference whether Belden or *Schenck* ultimately lost the thirty dollars. *Merrills v. Law*, 9 Cow., 65; *Clark v. Badgley*, 3 Halst., 233; *Gillmore v. Woolcock*, 13 Wis., 589; Tay. Stats., 839, § 3.

*Cassoday & Merrill*, for respondent.

The following opinion was filed at the June term, 1872.

DIXON, C. J. It is a concession fairly due to the evidence, we think, that there was reserved and taken by the plaintiff upon the loan for which the notes and mortgage in suit were given, the sum of thirty dollars usury. Such usury was received by the plaintiff, or paid to him, by being deducted from the sum agreed to be loaned, making the sum actually loaned $2,470, instead of $2,500 as represented by the notes and mortgage. Such deduction was exacted by the plaintiff at the time of the loan.

It is likewise a concession equally due to the evidence, as we understand it, that the $30 usury so exacted and taken was not in fact paid, or the loss thereof suffered or borne, by the defendant *Schenck*, the husband, who made the notes and mortgage and appeared in the transaction as the borrower of the money. The $30 was actually paid, or the loss from the usurious exaction in reality sustained, by Belden, from whom *Schenck* purchased the farm, a portion of the price of which constituted a part of the consideration for which the notes and mortgage were executed. Belden deducted the $30 from the price which *Schenck* had agreed and was willing to pay him for the farm.

McArthur vs. Schenck and another.

This fact we think quite clearly established by the evidence, and especially by the testimony of *Schenck* himself.

The question involved, therefore, is very clearly and correctly presented by the following case supposed by the learned counsel for the defendants: "Suppose A. proposes to buy a farm of B., for which B. asks $2,500 cash. A. will buy it if he can borrow the money to pay for it, and applies to C. for that purpose. C. says, 'I will loan you the money if you will pay me thirty dollars in excess of lawful interest.' A. informs B. that he would like to buy his farm, but is unwilling to stand the thirty dollar shave. B. says, 'I will stand it.' On this consideration A. borrows of C. $2,470, and secures by his note and mortgage the payment of $2,500. C. attempts to foreclose the mortgage, and A. sets up the usury. Is it any answer on the part of C., that in fact B. and not A. lost the thirty dollars ?"

If, in addition to the facts thus supposed by counsel, we suppose the still further or different facts, that B., the seller of the farm, is acting as agent for C., the lender of the money, in negotiating the loan, and, knowing the unlawful exaction and that A. is unwilling to submit to it, submits to and incurs the loss himself by a corresponding deduction from the price of the farm, rather than not make sale of it, we shall have a case more exactly fitting the circumstances of the present one, and illustrating the true attitude and relations of the parties to the transactions.

The question to be resolved, therefore, is that above put by counsel. Will the fact that the usury was in truth paid by B., and not by A., prevent A. from setting it up in defense, and avoiding the note and mortgage on account of it ?

Suppose A., being indebted and desirous of borrowing money, applies to C. for a loan, and C. refuses, saying he is unwilling to loan his money at the rate of interest allowed by law, but that he will do so if B., a stranger to the loan, will give him, C., so much money, equalling the amount of usury which he demands; and B. thereupon voluntarily gives him the amount required,

and he then makes the loan to A. at lawful interest; is such a transaction usurious and void as to A., the borrower?

Again, in the case like that put by counsel, let it be supposed that B., instead of saying to A., that he, B., will stand the loss, goes himself to C., and advances or pays the usury demanded, whereupon C. lends the money to A., at a lawful rate of interest, would such a contract be usurious as between C. and A.?

We regard the foregoing only as different hypotheses presenting the same question.

The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender and subject to his utmost exactions and avaricious demands, unless protected by laws. In theory the borrower has been put, by such laws, in the same category with persons under legal disability to contract, such as infants, *femes coverts*, and persons *non compos mentis*. He has been declared legally incompetent to make a bargain about money where more than the lawful rate of interest was demanded. The prohibition of all such laws, and of our law, has been and is against the lender's bargaining for, reserving or taking usury *from the borrower*. We say "from the borrower," not because the statute uses these exact words or in terms so enacts the prohibition, but because such is the evident intent and purpose of the statute. Acts of the kind have always been so interpreted and understood. It is to shield from the grasp of the lender, and save the borrower from the injurious consequences of his own weakness and inability, that such statutes have been passed. They are designed for the protection of the borrower, and the protection so given has been extended to those persons standing in his place or representing him and succeeding to his rights, such as heirs-at-law, executors, devisees, sureties, assignees and the like. They are designed for the borrower's protection and benefit, and the protection and benefit of those thus representing him, *when he or they has or have suffered loss or injury from the*

McArthur vs. Schenck and another.

*unlawful exactions of the lender, or may suffer such loss or injury from the performance of the usurious contract, and when likewise he or they see fit not to waive the sanction or penalty of the statute in his favor.* For upon this subject of waiver it has always been a well understood rule, that the borrower may *afterwards* waive the forfeiture or penalty and ratify the transaction, if he deliberately chooses to do so. After the loan had been made, and he is not under the necessity of borrowing or of forbearance, and when the remedy of the statute is fully in his own hands and within his control, he is considered legally competent to waive it; and upon this point the rules of the courts have been very severe and stringent, and that he must exercise his privilege with the utmost promptness and diligence, or otherwise no relief will be afforded.

A recurrence to these general principles, which are well understood and elementary, seems very clearly to indicate that the payment of usury, if it be properly so called, not by the borrower, but by a *stranger* to the contract, one not connected with the loan nor liable for it, who voluntarily or from any motive advances the sum exacted or sustains the loss where the borrower is unwilling or declines so to do, is not a circumstance of which the borrower can be permitted to take advantage for the purpose of having the contract declared inoperative and void for usury. It seems not to be à case in any manner falling within the true spirit and intent of the law against usury. That law, as we have seen, is intended for the benefit and protection of the borrower who is himself obliged to submit to and suffer by the exactions of the usurer, and not for the benefit or protection of strangers, or those not borrowers or standing in that relation to the lender. The rule is, that the plea or objection of usury is personal to the borrower or those representing him, a privilege peculiar to him or them, because he or they have or might have sustained injury by reason of the usurious contract; but that no stranger can be permitted to take advantage of or set up the objection. The reason why the stranger can not plead

it is, that he has lost nothing by it. If A. purchase a farm of B. subject to a usurious mortgage to C., agreeing to pay such mortgage as part of the price of the farm, or for other valuable consideration, A. cannot plead the usury or avoid payment of the mortgage on that ground. Why? Because in that case A. has lost nothing by the usury, and is a stranger to the contract, and because B., as he lawfully might do, has waived the objection and ratified the agreement. The learned counsel might argue in that case, as he has done in this, that there was the usurious agreement, and there the usury, and that the statute declares the security void; but, within all the adjudications upon the point, such argument could not prevail.

And it seems to us that the same or a similar reason must be valid against the objection of the defendants in the present case. So far as the usury is concerned, they were strangers to it. They did not pay it, and lost nothing, and can lose nothing by it. The contract entered into between them and the plaintiff, the notes and mortgage executed, were, so far as their pecuniary interests were and are involved, entirely lawful and free from any usurious taint or corruption.

And, upon looking into the authority of particular cases, more or less closely resembling the present, we find the views above expressed to have been very generally, and, so far as we know, universally sustained.

In *Little v. White*, 8 N. H., 276, it was decided that an administrator who had given his promissory note for a sum due from his intestate, and including certain unlawful interest which the intestate had agreed to pay, could not, in a suit upon the note, sustain a plea of usury on account of the unlawful interest so agreed to be paid by the intestate, and included in it. The ground of the decision was, that the administrator had in fact or presumptively long before been allowed the full sum for which his own note was given, as a payment made by him on account of the estate. "He stands, therefore," said the court,

"in a similar situation to that of one who has given his note for usury *contracted to be paid by another*, having received a full consideration for the note so given, and this furnishes no ground on which to sustain a defense." And the court further proceeded: "The defendant is not attempting to set up a defense for the benefit of the estate which he represented, but is asking to avail himself of the payment of usury upon a contract *made by another*, for the purpose of obtaining a deduction upon a security *made by himself.* This he cannot be permitted to do. Had the amount which he allowed to the creditor as usury, been disallowed on the settlement of his administration account, he might have shown that fact in evidence in avoidance of so much of the note he gave, on the ground of a want or failure of consideration. But if he has received the full amount for which he gave his note, in the settlement of his administration, he is no more entitled to avail himself of the usury which has been received, than he would be in any other case *where the creditor had received usury of a third person.* In such case it is usury paid by the estate of the intestate, and not by the defendant." It is difficult to perceive how that case and the case at bar are to be distinguished on principle.

And again, in *Bearce v. Barstow*, 9 Mass., 45, the facts were as follows : A. owing B. a sum of money for a valid consideration, and B. owing C. a sum on which he had received usurious interest, an agreement was entered into that A. should give to C. a promissory note for the sum due from B. to C., including the usurious interest, and A. was discharged of so much of his debt to B. In an action by C. against A. upon the note so given, it was held that the note was not void by the statute against usury, the verdict of the jury having negatived any contrivance to evade the statute. The argument by counsel there was like that which has been very ingeniously and forcibly presented here. Counsel said : "This was a contract made for the payment of money lent, whereby there was reserved or taken above the rate of interest allowed by the statute. And

as it is within the words, so it is within the reason of the stat-
ute.   If this action is maintained, the statute may always be
avoided by procuring a third person to give a note instead of
the borrower.   The statute was intended to operate on the
lender, and not on the borrower.   And it will be noticed that
the original lender was the present plaintiff." But the court
overruled the objection, and in reply said : "The English stat-
utes against usury contain a similar clause for the avoidance of
usurious contracts, expressed in nearly the same terms, and en-
tirely of the same import, as the clause in our own statute relied
on for the defendant.   The construction there is, as appears by
numerous decisions, that the objection of usury, to avoid a con-
tract, must be made to the security or promise whereupon or
whereby illegal interest has been taken or reserved, and by a
party otherwise liable therein." And the court, after observ-
ing that a renewal of the contract between the same parties, and
every species of contrivance in the modification of any loan or
contract for the purpose of evading the statute, being cases
within the mischief, are also within the remedy, furthermore
said, that "where the party liable upon a usurious contract will
not avail himself of the remedy provided by the statute for the
purpose of avoiding it; where he voluntarily discharges it, or
suffers a judgment to be recovered upon it, or makes it the con-
sideration of a contract entirely new, as being with *a third per-*
*son not a party to the original contract,* or *to the usury paid or re-*
*served upon it,* or as combining *other parties and considerations,*
and not being a contrivance to evade the statute,— there the
provision no longer applies."

And among the English decisions cited by the court was that
of Lord KENYON, in *Hulme v. Turner,* 4 Esp. N. P. C., 11,
which was very pertinent to the question under consideration.
There, the payee of a note given for a usurious consideration
had arrested the maker, and, to procure his discharge from
arrest, a third person joined the maker of the note in another
note for the amount of the debt; and the chief justice said

" he was clearly of opinion that the consideration of the first note could not be questioned in an action on the second, unless it could be shown that it was a colorable shift to evade the statute, devised when the money was originally lent and the first note granted." And see also *Cuthbart v. Haley*, 8 Durnford & East, 390; Comyn on the Law of Usury, 186; *Bridge v. Hubbard*, 15 Mass., 100–105.

And in a late case in the court of appeals of Virginia, *Drake's Ex'r v. Chandler*, 18 Grattan, 909, the point decided is correctly stated in the reporter's note in these words: " A., B. and G. execute a bond for one thousand dollars to P. for a loan of money at usurious interest. Subsequently O., J. and W., with B. who signs himself security, execute their bond to P. for the amount, principal and interest, of the first bond and another small bond of A., in lieu of these bonds. The usury is purged by the change of the parties, and the last bond executed is valid." The opinion is valuable as showing that *strangers* to the usury cannot take advantage of it, and it also refers to and examines several cases not above cited.

For these reasons, this court is of the opinion that the judgment appealed from was correct, and must be affirmed.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied at the **January term, 1873.**