ZANG and another, Respondents, vs. SCHUMANN and another, Appellants.

*November 6—December 2, 1952.*

For the appellants there were briefs by *Frank, Karl &*
*Bessman* of Milwaukee, and oral argument by *Leonard*
*Bessman.*

For the respondents there was a brief by *Charles L.*
*Mullen,* attorney, and *Mark M. Camp* of counsel, both of
Milwaukee, and oral argument by *Mr. Mullen.*

CURRIE, J.    The jury in the civil court, by their verdict,
found that the $400 paid by the plaintiffs to the defendants
constituted a carrying charge on the $3,000 note, such being

the note which plaintiffs had executed to the defendant Elizabeth Schumann at the time plaintiffs purchased the tavern business from the Rueggs on November 24, 1948. The first question with which we are faced on this appeal is whether there is any credible testimony which would sustain the jury's finding that the $400 was paid by the plaintiffs as a carrying charge on their own $3,000 note.

It is the contention of counsel for plaintiffs that the testimony of the two plaintiffs does sustain such finding. All of the other evidence in the record, including the recital in the written agreement of sale entered into between plaintiffs and the Shavers, is to the effect that the $400 was not segregated from the $1,000, but that a lump sum of $1,400 was paid by plaintiffs to defendants as liquidated damages for breach of the lease. However, inasmuch as there is a conflict in the evidence on this appeal, we must consider the same from the standpoint most favorable to the plaintiffs.

The plaintiff Loeffler testified that after plaintiffs decided to sell, one Holwick became interested, and, in order to finance the purchase from plaintiffs, Holwick was to borrow money from Elizabeth Schumann at the rate of five per cent interest, and Loeffler stated:

"On this note Mr. Holwick left agreeing to call later and give us his decision. After he left Mrs. Marjorie Schumann says, *'I will have to charge Mr. Holwick $400 carrying charges.'* And I said that man would never pay that besides the $500. She said, 'Didn't you know Ruegg paid that for you?' and 'Would you pay the $400 for him if you figure he will back out?' I said, 'I can't answer for my partner and myself we would have to talk it over,' and we talked it over and through a lot of discussion we came to the conclusion rather than lose all this money, the $7,000 at the end of three years, the only thing to do was to agree to her terms and we agreed to pay $1,000 for what she called breaking the lease *and $400 carrying charges on the money that we had borrowed."* (Emphasis supplied.)

From the foregoing quoted testimony of the plaintiff Loeffler it appears that the defendant Marjorie Schumann did not request that the plaintiffs pay $400 carrying charges on their own $3,000 note, but rather on the new note which Holwick was to give for the money he was to borrow from the defendant Elizabeth Schumann, and that the conclusion of the witness expressed at the end of such quoted testimony, that the $400 carrying charge was to be on the plaintiffs' own $3,000 note, was an erroneous interpretation of the demand made by Marjorie Schumann.

The other testimony given by Loeffler does not purport to identify the $400 with either the existing $3,000 loan of plaintiffs, or the new $4,200 loan made by Elizabeth Schumann to the Shavers. For example, in testifying as to the payment actually made to Marjorie Schumann for Elizabeth Schumann at the time of the sale to the Shavers, Loeffler testified:

"Altogether we paid her $1,000 for transferring the lease, which she terms breaking the lease, $400 carrying charges, and $200 we put up in escrow for having the place cleaned."

The plaintiff Zang at no time testified that the $400 paid as a carrying charge was paid on the plaintiffs' $3,000 note, but his testimony is to the effect that the $400 was paid as a carrying charge on the new loan to the Shavers, such testimony being as follows:

"Yes, she [Marjorie Schumann] came down a few days later if I remember and talked to Chuck [Loeffler] and myself while we were in the tavern and she made mention of the $400 we would have to pay carrying charges for the new tenants that we got through Mr. Louis Aderman."

It is our conclusion that there is no credible evidence to substantiate the jury's finding that the $400 was paid by the plaintiffs as a carrying charge on their own $3,000 note, but, construing such testimony most favorably to plaintiffs,

the $400 was paid as a carrying charge on the new $4,200 loan made by Elizabeth Schumann to the Shavers. This presents the question of whether a payment by a third person, or persons, not a party to a loan, can ever be usury.

The decision of this court in *McArthur v. Schenck* (1873), 31 Wis. 673, 675, 677, 11 Am. Rep. 643, is directly in point, and resolves the question in favor of the defendants Schumann. We quote from the opinion by Mr. Chief Justice Dixon in that case as follows:

"The question involved, therefore, is very clearly and correctly presented by the following case supposed by the learned counsel for the defendants: 'Suppose A. proposes to buy a farm of B., for which B. asks $2,500 cash. A. will buy it if he can borrow the money to pay for it, and applies to C. for that purpose. C. says, "I will loan you the money if you will pay me thirty dollars in excess of lawful interest." A. informs B. that he would like to buy his farm, but is unwilling to stand the thirty-dollar shave. B. says, "I will stand it." On this consideration A. borrows of C. $2,470, and secures by his note and mortgage the payment of $2,500. C. attempts to foreclose the mortgage, and A. sets up the usury. Is it any answer on the part of C., that in fact B. and not A. lost the thirty dollars?' . . .

"A recurrence to these general principles, which are well understood and elementary, seems very clearly to indicate that the payment of usury, if it be properly so called, not by the borrower, but by a *stranger* to the contract, one not connected with the loan nor liable for it, who voluntarily or from any motive advances the sum exacted or sustains the loss where the borrower is unwilling or declines so to do, is not a circumstance of which the borrower can be permitted to take advantage for the purpose of having the contract declared inoperative and void for usury. *It seems not to be a case in any manner falling within the true spirit and intent of the law against usury. That law, as we have seen, is intended for the benefit and protection of the borrower who is himself obliged to submit to and suffer by the exactions of the usurer, and not for the benefit or protection of strangers, or those not borrowers or standing in that relation to the*

*lender.* The rule is, that the plea or objection of usury is personal to the borrower or those representing him, a privilege peculiar to him or them, because he or they have or might have sustained injury by reason of the usurious contract; but that no stranger can be permitted to take advantage of or set up the objection." (Emphasis supplied.)

In the Wisconsin Annotations (1933), p. 353, to Restatement, 2 Contracts, sec. 531, prepared under the direction of the late Prof. William H. Page, appears the following statement:

"The Wisconsin cases are in accord with the Restatement in holding that a payment made by a third party in order to induce the making of the contract, although together with interest it exceeds the permitted rate, does not make the bargain usurious: *McArthur v. Schenck,* 31 Wis. 673, 11 Am. Rep. 643 (1873). From this case, however, it would seem that it is immaterial whether or not the borrower knows of or consents to the payment."

However, even if the two plaintiffs had directly testified that they had been required to pay $400 to the defendants as a carrying charge on plaintiffs' own $3,000 note, as a condition to making the sale to the Shavers, such payment would not have been usury. The $3,000 note as originally drawn and executed provided for no usurious payment but merely interest at the rate of five per cent per annum, and no usurious payment was contemplated by the parties at the time of the giving of such note. If plaintiffs had remained in possession of the tavern instead of vacating at the end of ten months and selling out, and had continued to make their payments of $50 per week on the $3,000 note, the defendants would have been in no position to exact more than the five per cent interest specified in the note. The defendants were only able to exact the additional $400 because of the plaintiffs' desire to be relieved from the remaining two years and two months liability on the lease.

In *Randall v. Home Loan & Investment Co.* (1944), 244 Wis. 623, 627, 12 N. W. (2d) 915, which was an action brought under sec. 115.07 (1), Stats., for treble damages, this court held that a provision in a note requiring the borrower to pay an additional one per cent per month in the event of default was not to be treated as a usurious interest charge, but would be considered as having been inserted for the purpose of compelling payment at maturity. The court cited and quoted from several Wisconsin decisions and those of other jurisdictions, among them *Tallman v. Truesdell* (1854), 3 Wis. *443, which involved an agreement that the borrower would pay compound interest in the event of a default.

The court in its decision in *Tallman v. Truesdell, supra,* stated (p. *450):

"We do not think the agreement to pay compound interest in case of default in paying the interest stipulated is necessarily usurious. It is not a positive undertaking to pay compound interest at all events, but only in case of default in complying with the other covenants of the mortgage, and may be regarded in the light of a penalty of forfeiture."

The Wisconsin cases on this point are in accord with Restatement, 2 Contracts, p. 1037, sec. 536:

"Unless especially forbidden by statute a provision in a bargain for a loan that after maturity interest at a higher rate shall be charged than is permissible before maturity, does not render the bargain usurious unless the parties when entering into it contemplate that the loan shall not be paid at maturity."

It seems clear under the authorities that where no usurious interest was provided for in the original note or loan agreement, and none was contemplated between the parties at the time of the inception of the transaction, a subsequent payment made by the borrower for the use of the money borrowed in excess of the rate permitted by statute does not constitute

usury. The law on this point is well summarized in 55 Am. Jur., Usury, p. 331, sec. 12, as follows:

"The definition of usury imports the existence of certain essential elements generally enumerated as (1) a loan or forbearance, either express or implied, of money, or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. The presence of these elements infallibly indicates usury irrespective of the form in which the parties put the transaction; on the other hand, the absence of any one of them conclusively refutes the claim of usurious practice. In order that a transaction be considered usurious, these elements must exist at the inception of the contract, *since a contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. It is the agreement to exact and pay usurious interest, and not the performance of the agreement, which renders it usurious.* The test to be applied in any given case is whether the contract, if performed according to its terms, would result in producing to the lender a rate of interest greater than is allowed by law, and whether such result was intended." (Emphasis supplied.)

There is no doubt but that the defendants drove a harsh bargain both when the Rueggs sold to the plaintiffs, and later when the plaintiffs sold to the Shavers. In each instance the defendant Elizabeth Schumann received a $1,400 payment without sustaining a penny of loss of principal, interest, or rent. However, it is clear under the foregoing cited authorities that no part of such payments constituted usury.

*By the Court.*—Judgment reversed and cause remanded with directions to dismiss the complaint.