RUID, Appellant, v. DAVIS, Respondent.*
DAVIS, Respondent, v. JONÉS, Administrator, Appellant.*

*October 6—November 3, 1959.*

* Motion for rehearing denied, with $25 costs, on January 5, 1960.

For the appellants there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik.*

For the respondent there was a brief by *Terence N. Hickey* of Hayward, and *Doar & Knowles* of New Richmond, and oral argument by *Mr. John Doar* and *Mr. Hickey.*

HALLOWS, J.    The first question is whether Davis was causally negligent as to speed as a matter of law. To pass on this question it is necessary to review the material evidence on how the accident happened from the standpoint most favorable to Davis, because he was absolved of any negligence by the jury. *Zang v. Schumann* (1952), 262 Wis. 570, 55 N. W. (2d) 864; *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759.

Davis testified he was going 40 to 45 miles an hour when he first noticed the fog bank. He was traveling about 35

miles an hour when he entered the fog and applied his brakes to slow down. On adverse examination he testified he thought he was going between 30 and 35 miles an hour through the fog. At the trial he stated he did not know what his reduced speed was, but he was able to see the road ahead. He could not say how far he could see the surface and estimated it at 10 feet. He could see the center line and the right-hand edge of the road. As he was proceeding through the fog he noticed auto lights coming toward him. He could not tell how far away or on which side of the road they were. At this point he did not put on his brakes. He kept watching the oncoming lights. Suddenly the lights seemed to become much brighter and he realized that the oncoming car was in his lane. He thought about turning right into the ditch, but not remembering how deep the ditch was, he thought about turning left to the other side of the road. He made a slight turn to the left, jammed on his brakes, blew his horn, and then the cars collided. Davis was knocked unconscious and did not remember any subsequent details of the accident.

Witness Durch testified the fog was "very thick" at the curve. He was proceeding north on Highway 27 shortly after the accident and slowed down to 10 miles an hour when he entered the fog bank. He came upon Davis' car in his lane of traffic and found steam flying out of the radiator of Davis' car. The chief of police of Hayward testified he reached the scene about 12:50 a. m. and the fog was not too bad from the north until he almost arrived at the scene of the accident. Then it was pretty thick. Coming from the north he could see the Davis car in the fog, but south of Davis' car the fog was so thick nothing could be seen.

Davis' car made skid marks of 20 to 22 feet. There is some conflict in the testimony that the left front skid marks started either five inches east of the center line or 12 inches

east of it. The front left skid mark ended 12 or 13 inches over the center line in the left lane. A reconstruction of the accident indicated the Davis car was pushed back four or five feet from the point of impact, which is taken to be the end of the Davis skid marks. Davis' car was turned counter-clockwise and came to rest in the east lane of the highway facing southwest. The Ruid car from the point of impact apparently veered off the highway 42 feet, eight inches to the southwest and overturned in the ditch.

The testimony and exhibits showing the damage to the cars indicated the Davis car was hit from the right to the left in front, and the Ruid car was struck at the front left and along the left side. The clock of the Ruid car stopped at 12:45 a. m., and the speedometer at 64 miles an hour.

We must conclude that Davis could not stop his car within the distance that he could see the road ahead. Davis could see the oncoming car lights but because of the heavy fog he could not see these lights well enough to determine their distance or location on the road. In spite of this he did not reduce his speed but continued on, watching the lights. The failure of an operator of a car driving through a heavy fog in the nighttime to reduce his speed to the extent necessary to enable him to stop within the distance he can see the road ahead is negligence as to speed. Such a driver whose vision is reduced by fog or for any other reason should reduce his speed even before any vehicle or obstruction is sighted by him in his lane of travel. Davis saw oncoming car lights, but he could not see the road between his car and the oncoming car. He could not judge the distance between him and the approaching car, its speed, or whether it was in his lane of travel. Not to reduce his speed that moment so that he could stop within the distance that he could clearly see objects on the road ahead within his own head-lights constitutes negligence as a matter of law as to speed.

This principle was adopted in *Lauson v. Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, where the driver of an automobile was held negligent in driving on a dark, rainy night at such a rate of speed that he could not stop within the distance that he could plainly see an open culvert in the road ahead of him. In *Knipfer v. Shaw* (1933), 210 Wis. 617, 246 N. W. 328, 247 N. W. 320, this court said, at page 621: "Driving in the nighttime through a fog which is so dense as to render the lights of a car practically useless is quite the same as driving a car in the dark without lights."

In *Schroeder v. Kuntz* (1953), 263 Wis. 590, 58 N. W. (2d) 445, this court held the operator of a car was negligent as a matter of law in failing to reduce her speed of 40 to 45 miles an hour except by releasing the accelerator to some extent when she was partially blinded by the bright lights of an oncoming car, and as a result collided with an unlighted truck stopped partly in her lane of traffic. This principle was also applied in *Guderyon v. Wisconsin Telephone Co.* (1942), 240 Wis. 215, 2 N. W. (2d) 242, in holding as a matter of law that a motorist who saw an obscuring cloud of smoke blowing across the highway when she was about 100 feet away and who approached at 25 to 35 miles an hour without any material change in her speed, entered and passed through the smoke, and eight or 10 feet beyond crashed into a truck parked on the highway. See also *Reuhl v. Uszler* (1949), 255 Wis. 516, 39 N. W. (2d) 444 (grade of road obstructed vision); *Petlock v. Kickhafer* (1958), 3 Wis. (2d) 74, 87 N. W. (2d) 857, 89 N. W. (2d) 231 (grade of road obstructed vision); *Thelen v. Machotka* (1954), 268 Wis. 1, 66 N. W. (2d) 684 (curve in the road obstructed vision).

The respondent contends that negligence as to speed is limited to situations in which an operator cannot stop his car within the distance the driver can see a stationary ob-

ject or a slowly moving, receding object in his lane of traffic. Such contention cannot be accepted. Sec. 346.57, Stats., provides:

"(2) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and using due care.

"(3) The operator of every vehicle shall, consistent with the requirements of sub. (2), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, when passing school children, highway construction, or maintenance workers or other pedestrians, and when special hazard exists with regard to other traffic or by reason of weather or highway conditions."

When Davis first saw the oncoming lights he could not judge their distance or their location on the road. To continue on through the thick fog confronted with such a hazard without reducing his speed to the point where he could stop within the clear view of his vision was negligence. It took Davis 20 to 22 feet to stop when he could only see the sides of the road and 10 feet ahead. Witness Durch was able to see the disabled Davis car ahead of him in his lane in time to stop at 10 miles an hour. When one's speed is so great under the conditions and actual and potential hazards then existing as to make it impossible for the operator to do anything to avoid the accident, he is negligent. See *Kornetzke v. Calumet County,* post, p. 363, 99 N. W. (2d) 125.

Because we conclude there should be a new trial on all the issues, it is unnecessary to deal with the other contentions on this appeal.

*By the Court.*—The judgments appealed from are reversed, and a new trial is granted in both cases.