MORTGAGE ASSOCIATES, INC., Respondent, v. SIVERHUS and wife, Appellants: CAPITOL LUMBER & SUPPLY, INC., and others, Third-Party Defendants.

*No. 152. Argued April 1, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 266.)

---

[2] *See State v. Christel* (1973), 61 Wis. 2d 143, 159, 211 N. W. 2d 801.

654

For the appellants there was a brief by *Grutzner, Jaeckle & Byron, S. C.,* attorneys, and *Edward E. Grutzner* of counsel, all of Beloit, and oral argument by *Edward E. Grutzner.*

For the respondent there was a brief by *Arthur M. Moglowsky* and *Bass, Goldstein & Moglowsky, S. C.,* all of Milwaukee, and oral argument by *Arthur M. Moglowsky.*

BEILFUSS, J.   The two primary issues on appeal are:

(1) Was the promissory note a forbearance calling for usurious interest in violation of the usury statute [1] or was it a time-price differential transaction?

---

[1] "138.05 **Maximum rate; prepayment, disclosure; corporations.** (1) Except as authorized by other statutes, no person shall, directly or indirectly, contract for, take or receive in money, goods or things in action, or in any other way, any greater sum or any greater value, for the loan or forbearance of money, goods or things in action, than:

"(a) At the rate of $12 upon $100 for one year computed upon the declining principal balance of the loan or forbearance;

"(b) With respect to loans or forbearances repayable in substantially equal weekly or monthly instalments and the face amounts of which include predetermined interest charges, at the rate of $6 upon $100 for one year computed upon that portion of

(2) Was the assignee of the note a holder in due course?

"Usury" defined in the most simple terms is interest upon a loan or forbearance in excess of that permitted by law. Clearly this transaction was not a loan. If the difference between the cash price and time payment price was interest it was a forbearance and because it amounted to about 16 percent per annum it was in violation of our usury statute set forth in the footnote.

A more detailed definition of usury that this court has adopted [2] appears in 55 Am. Jur., *Usury*, p. 331, sec. 12:

"The definition of usury imports the existence of certain essential elements generally enumerated as (1) a loan or forbearance, either express or implied, of money, or of something circulating as such; (2) an understanding between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater profit than is allowed by law; and (4) an intention to violate the law. The presence of these elements infallibly indicates usury irrespective of the form in which the parties put the transaction; on the other hand, the absence of any one of them conclusively refutes the claim of usurious practice. In order that a transaction be considered usurious, these elements must exist at the inception of the contract, since a contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. It is the agreement to exact and pay usurious interest, and not the performance of the agreement, which renders it usurious. The test to be applied in any given case is whether the contract, if performed according to its terms, would result in producing to the lender a rate of interest greater than is allowed by law, and whether such result was intended."

---

the original principal amount of any such loan or forbearance, not including interest charges, for the time of such loan or forbearance, disregarding part payments and the dates thereof."

[2] *Zang v. Schumann* (1952), 262 Wis. 570, 579, 55 N. W. 2d 864; *State v. J. C. Penney Co.* (1970), 48 Wis. 2d 125, 132, 179 N. W. 2d 641.

However, this court [3] and the federal courts [4] have long recognized that a true time-price differential is not usury.

In *Hogg v. Ruffner, supra*, the United States Supreme Court stated at pages 118, 119:

"But it is manifest that if A propose to sell to B a tract of land for $10,000 in cash, or for $20,000 payable in ten annual instalments, and if B prefers to pay the larger sum to gain time, the contract cannot be called usurious. A vendor may prefer $100 in hand to double the sum in expectancy, and a purchaser may prefer the greater price with the longer credit; and one who will not distinguish between things that differ, may say, with apparent truth, that B pays a hundred per cent. for forbearance, and may assert that such a contract is usurious; but whatever truth there may be in the premises, the conclusion is manifestly erroneous. Such a contract has none of the characteristics of usury; it is not for the loan of money, or forbearance of a debt."

As between Capitol and the Siverhuses, the trial court found the transaction was a time-price differential contract and not usury. We agree. Abel Siverhus was at the time and had been in the roofing and siding business himself for a period of eighteen years as a workman or an estimator. He knew the quality of materials and how they were to be applied. Both Mr. and Mrs. Siverhus knew that the cash price for the entire job was $2,660 and were satisfied that the amount was fair; they also acknowledge that they knew if they did not pay cash the price would be $3,703, consisting of sixty monthly payments of $61.72. There are no interest nor ambiguous charges shown on either the contract or the note. If Siverhus had elected to pay cash within sixty days his

---

[3] *Otto v. Durege* (1861), 14 Wis. 621 (*571); *State v. J. C. Penney Co., supra.*

[4] *Hogg v. Ruffner* (1861), 66 U. S. (1 Black), 115, 17 L. Ed. 38.

total payment would have been as quoted, $2,660; when he neglected to do so or elected not to do so it was clear his obligation was $3,703.

There was a disclosure of both prices, they were not ambiguous, they were not represented as a loan, no interest was set forth nor dependent on the balance due, and at the time there was an opportunity to choose between a cash and time sale price. As such, we believe the trial court correctly concluded the transaction was a time-price differential sale as between the Siverhuses and Capitol.

Several cases in other jurisdictions [5] have held that if the sale is a three-party transaction that involves a finance company or lending institution as well as the vendor and vendee at the time of the sale, the financing charge will be regarded as interest on a loan.

The evidence here reveals Mortgage Associates, Inc., is a large lending institution doing business in several states; that about 10 percent of its business involves the purchase of notes and mortgages from housing improvement contractors; that it did business with about 500 such contractors and that it had purchased or discounted only 37 notes from Capitol and ceased entirely after it received six complaints from purchasers about the quality of Capitol's work.

Mortgage Associates, Inc., was, however, aware of the general method of doing business by Capitol; knew some of its officers and employees, checked Capitol's credit rating, and furnished Capitol with note, mortgage and credit investigation forms and with rate books.

In this instance Capitol did not use the Mortgage Associates' forms and did not give Mortgage Associates, Inc., a copy of the underlying contract. There is nothing on the face of the note or mortgage to indicate any irregularity or ambiguity. The Siverhuses did not respond

[5] *See* 54 Op. Atty. Gen. (1965), 235, 244, for the citations and discussion of these cases.

to Mortgage Associates' inquiry as to the nature of the contract nor the performance by Capitol. Under these facts we cannot conclude that this was in reality a three-party transaction between Capitol, the Siverhuses and Mortgage Associates, Inc., so as to make it a loan rather than a time-price differential sale.

The trial court's conclusion that this was a time-price differential transaction must be upheld.

Was Mortgage Associates, Inc., a holder in due course?

The jury found that employees of Capitol made false representations in connection with the signing of the note and mortgage with intent to deceive and induce the defendants to sign them. It further found Abel and Patricia Siverhus believed such representations to be true and justifiably relied upon them to their financial damage. These findings are in no way challenged on appeal.

The appellants do challenge the jury's findings that Mortgage Associates, Inc., acquired the promissory note for value in good faith and without notice of the defective and incomplete work by Capitol or in violation of the rules of the Wisconsin department of agriculture.

The appellants further contend that as a matter of law, because of the fraud by Capitol in procuring the note and the close relationship between Mortgage Associates, Inc., and Capitol, Mortgage Associates should not be classified as a holder in due course.

The first contention of the appellants is that the note was not negotiable because it was not for a sum certain; that is, it did not state the rate of interest and because if prepayment were to be made the amount due could be computed by reference to the note itself. And further, it was in the wrong amount.

Sec. 403.104, Stats., provides:

"**Form of negotiable instruments: 'draft'; 'check'; 'certificate of deposit'; 'note'.** (1) Any writing to be a negotiable instrument within this chapter must:

"(a) Be signed by the maker or drawer; and

"(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

"(c) Be payable on demand or at a definite time; and

"(d) Be payable to order or to bearer."

We believe the note meets all the requirements of the statute so as to be a negotiable instrument. Both Abel and Patricia Siverhus signed it and acknowledged their signatures. It contains an unconditional promise to pay $3,703 in 60 installments of $61.72 per month beginning May 1, 1969. It is payable to Capitol Lumber & Supply, Inc.

The appellants argue the note is not for a sum certain as defined in sec. 403.106, Stats., because Mortgage Associates, Inc., made a rebate for early payment and such fact was not on the face of the note.

Mortgage Associates, Inc., is licensed by the State Banking Commission under secs. 138.07 (collateral loan law) and 138.09 (precomputed loan law), Stats., and is required by a rule of the State Banking Commission to allow refunds in case of a prepayment. Such was done in this case and the balance after refund was determined to be $3,342.01. The fact that Mortgage Associates, Inc., was required to make a refund on the note subsequently purchased cannot affect the negotiability of the note made by the Siverhuses and given to Capitol. The note provides for an amount of $3,703, payable in sixty monthly payments of $61.72. Sixty times $61.72 is $3,703.20.

Sec. 403.302, Stats., defines a "holder in due course," as follows:

**"Holder in due course.** (1) A holder in due course is a holder who takes the instrument:

"(a) For value; and

"(b) In good faith; and

"(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The jury, by its answer to the question submitted to it, found that Mortgage Associates, Inc., qualified as a holder in due course under these requirements.

We believe there is ample credible evidence in the record to support these findings.

Mortgage Associates, Inc., paid Capitol $2,500 for the note on February 27, 1969, the day of the assignment.

There is no showing of lack of good faith or bad faith nor was there any notice that the note was overdue or any defense against it. There was nothing on the face of the instrument to show any infirmity. Before Mortgage Associates, Inc., purchased the note it examined the completion certificate signed by the Siverhuses wherein Abel Siverhus acknowledged the work was completed in a satisfactory manner. Mortgage Associates attempted to contact the Siverhuses by phone but was not able to do so. It also notified the Siverhuses of the assignment and requested information concerning the transaction from the Siverhuses which they neglected to furnish.

The appellants also argue that because Mortgage Associates, Inc., knew that there was an underlying agreement, the negotiability of the note was destroyed. This argument is fully answered by statute and its commentary:

"403.119 **Other writings affecting instrument.** (1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument.

"(2) A separate agreement does not affect the negotiability of an instrument."

The official UCC Comment to sec. 403.119 (40B, West's W. S. A. 78) states:

"4. Under this Article a purchaser of the instrument may become a holder in due course although he takes it with knowledge that it was accompanied by a separate agreement, if he has no notice of any defense or claim arising from the terms of the agreement. If any limitation in the separate writing in itself amounts to a defense or claim, as in the case of an agreement that the note is a sham and cannot be enforced, a purchaser with notice of it cannot be a holder in due course. . . ."

Sec. 403.305, Stats., provides:

"**Rights of a holder in due course.** To the extent that a holder is a holder in due course he takes the instrument free from: . . .

"(2) All defenses of any party to the instrument with whom the holder has not dealt except: . . .

"(c) Such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms."

The appellants argue that they did not know they signed the note and mortgage. However, in their testimony they acknowledge their signatures appear upon the note and mortgage and that they could have read the documents if they had wanted to but simply relied upon the agents of Capitol. Further, they did not even respond to the written notices of Mortgage Associates, Inc., within the time they could have paid their entire obligation for $2,500. This is not the excusable ignorance that will defeat the rights of a holder in due course.[6]

1 Wis. Adm. Code, sec. AG 110.01 (6) (e) (Register No. 177, Sept. 1970), as a part of the section dealing with prohibited trade practices by sellers of home improvements provided that it was a violation:

"To ask or require the customer to sign a completion slip, promissory note, or other negotiable instrument, either for financing or collection purposes or otherwise,

---

[6] *Muscoda State Bank v. Kolar* (1925), 187 Wis. 39, 203 N. W. 915.

before the installation or job is completed in accordance with the terms of the contract."

This section as then written does not affect the negotiability of a presigned note but penalizes a seller for an unfair trade practice.[7] Here there is no evidence that Mortgage Associates, Inc., knew the completion certificate was not accurate. And again the Siverhuses did not respond to the specific inquiries by Mortgage Associates which would have timely revealed the true situation.

The appellants raise other issues as to the negotiability of the mortgage and Mortgage Associates' claimed right to recovery under *quantum meruit*. Because we have determined the transaction was based upon a valid time differential, that Mortgage Associates was a holder in due course and a judgment was rendered on that cause of action, a discussion of *quantum meruit* is not necessary. The complaint sought only a judgment on the note —foreclosure of the mortgage was not demanded. The judgment rendered is only a money judgment based upon the note and for this reason any discussion of the negotiability of the mortgage is immaterial.

*By the Court.*—Judgment affirmed.

---

[7] It is noteworthy to repeat a statement in the brief of the appellants reflecting new consumer regulations to prevent these situations from arising:

"Since this case arose, the Wisconsin Department of Agriculture has promulgated its rule: Building and Home Improvement Trade Practices AG 110.03 effective October 1, 1970, which provided basically that under the facts of this case Mortgage Associates would have taken subject to the defenses of Siverhus, arising under the contract. Truth in Lending (Act of May 29, 1968 Consumer Credit Protection Act, Title I Truth in Lending Act and Regulation Z (12 CFR 226) effective July 1, 1969), would have given Siverhus a right to rescind the transaction. The Wisconsin Consumer Act, Title XL, Wis. Stats., effective March 1, 1973, would have given Siverhus the right to assert his defenses for one year against Mortgage Associates. These three pieces of legislation were enacted to give the consumer some effective legal weapons to enforce their rights. . . ."