Roy M. CIRCLE and Wanda J. Circle, on behalf of themselves and others similarly situated, Plaintiffs-Appellants,

v.

JIM WALTER HOMES, INC., a corporation, et al., Defendants-Appellees.

Rayfield SMILEY and Evelyn C. Smiley, on behalf of themselves and others similarly situated, Plaintiffs-Appellants,

v.

MID–STATE HOMES, INC., a corporation, Defendant-Appellee.

Nos. 75–1354, 75–1355.

United States Court of Appeals, Tenth Circuit.

Argued Feb. 24, 1976.

Decided April 12, 1976.

Rehearing Denied July 7, 1976.

James M. Little and John N. Goodman of Conner, Little & Conner, Oklahoma City, Okl., for plaintiffs-appellants.

Lawrence A. G. Johnson of Farmer, Woolsey, Flippo & Bailey, Inc., Tulsa, Okl., for defendants-appellees.

Before SETH, BARRETT and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

In each of the above cases reversal is sought of a judgment of dismissal as well as judgments refusing to certify either of the cases as class actions.

In each of the actions the plaintiffs allege that they purchased a home from Jim Walter Homes, Inc., et al.[1] Plaintiffs contracted to pay in installments the cash price and finance charge, and according to their further allegations executed promissory notes and mortgages running to the defendants. They also allege that the notes were negotiable within the meaning of the Uniform Commercial Code, 12A O.S.A. Section 3–104(1) (1961). Oklahoma has in addition adopted the Uniform Consumer Credit Code (UCCC), which makes it unlawful for a seller to "take a negotiable instrument other than a check as evidence of the obligation of the buyer" in a consumer credit transaction. 14A O.S.A. Section 2–403. Plaintiffs claim that they are entitled to relief under the provision of the UCCC Section 5–202, 14A O.S.A. Section 5–202, which provides that

> (1) If a creditor has violated the provisions of this Act applying to certain negotiable instruments (Section 2–403) * * *,

---

1. Although in one of the actions only Mid-State Homes, Inc. is named as a party defendant, it would appear that Mid-State is closely associated with the Jim Walter Homes organization and so, therefore, it is safe to proceed on the assumption that there is an identity of interests here.

the debtor is not obligated to pay the credit service charge or loan finance charge and has a right to recover from the person violating this Act or from an assignee of that person's rights who undertakes direct collection of payments or enforcement of rights arising from the debt a penalty in any amount determined by the court not in excess of three times the amount of the credit service charge or loan finance charge.

Still further of the plaintiffs' allegations is that all of the persons purchasing homes from the defendant beginning July 1, 1969, the effective date of the UCCC, executed a form negotiable note identical to that executed by the plaintiffs, the only differences being the dates, amounts and names. It is alleged that 358 persons signed such notes. Use of that number would result in a total refundable finance charge of $1.5 million and a total penalty of $4.5 million. The defendants contend that the number is limited to 208. The average finance charge for each of the potential class members would be $4,080. Based upon the defendant's estimate of the class size, the maximum finance charge to be refunded would be approximately $850,000, the maximum penalty approximately $2.5 million.

This cause has been before the court previously. In this court's opinion rendered February 5, 1975, the judgment of the district court dismissing the claims was reversed. Also, the judgment of the court denying class action status was reversed and remanded for further proceedings due to the fact that the judge had failed to set forth the reasons for its denial of class action status. Notwithstanding the remand, the cause was, as noted above, again dismissed and the class action status was again denied, and so once again we must address the case, considering two principal issues. These are:

First, whether the notes are negotiable within the meaning of the UCC and taking into account that the UCCC makes it unlawful for a seller to accept a negotiable instrument other than a check as evidence of the obligation of the buyer.

Second, whether the court erred in refusing to certify this as a class action.

I.

The notes in question are *on their face negotiable* meeting all requirements of the UCC, 12A O.S.A. Section 3–104. They contain an unconditional promise to pay a sum certain at a specific time to the order of defendant. Defendant's argument, with which the trial court agreed, is that the notes do not in fact promise to pay a sum certain because the debts incurred by plaintiffs in the purchase of homes are subject to a right of prepayment and rebate of unearned interest computed by the Rule of 78's. This arises from the Uniform Consumer Credit Code (UCCC), 14A O.S.A. Sections 2–209 and 2–210. Existence of such a provision is not apparent from the face of the note nor does the note disclose the fact of an underlying consumer transaction.

The trial court concluded the uncertainty of amount on the basis that should the note be paid in advance of the due date the maker would be entitled to a rebate of the unearned finance charge (which was in reality interest). Since this could not be calculated from the face of the note and required reference to the building contract in order to ascertain the amount of the cash price together with down payment so as to know the amount financed, it was reasoned that this failure to provide a formula on the face of the note rendered the instrument non-negotiable. Thus, the contention of defendant reduces itself to the issue whether the statute providing for the rebate of unearned interest itself creates uncertainty as to amount of the note within the meaning of the UCC or whether the statute (14A O.S.A. Section 2–403) prohibiting use of a promissory note itself constitutes a real defense even as to a holder in due course and thus expresses a policy which in effect renders the instrument a nullity as negotiable paper.

Our fundamental disagreement with the court's conclusion stems from the fact that no reason exists for holding that the note is

non-negotiable and unenforceable in the hands of a holder in due course.

A. *Whether the Prohibition in the UCCC, 14A O.S.A. Section 2–403, Against Use of a Negotiable Instrument in a Consumer Transaction Itself Causes the Note to Be Non-Negotiable.*

We determine this by analyzing the relevant consumer and commercial statutes, the first of which is 12A O.S.A. Section 3–305(2)(a), (b) (UCC). This section states in effect that a holder in due course takes the instrument free from "all claims to it on the part of any person and all defenses of any party to the instrument with whom the holder has not dealt." Exceptions are what might be termed real defenses such as infancy, incapacity, duress or illegality "as renders the obligation of the party a nullity." The question then becomes: Does the above mentioned provision of the UCCC prohibiting use of negotiable instruments in consumer transactions render the obligation of the party (maker) a nullity, for it is only the illegality of this extreme nature which is capable of bringing about the conclusion that the instrument is unenforceable even in the hands of a holder in due course. Though this is not exactly equal to rendering the instrument non-negotiable, it is arguably similar to it.

Turning now to the prohibition against use of negotiable instruments in consumer transactions, Section 2–403 of the UCCC provides:

> In a consumer credit sale or consumer lease, other than a sale or lease primarily for an agricultural purpose, the seller or lessor may not take a negotiable instrument other than a check as evidence of the obligation of the buyer or lessee. A holder is not in good faith if he takes a negotiable instrument with notice that it is issued in violation of this section. A holder in due course is not subject to the liabilities set forth in the provisions on the effect of violations on rights of parties (Section 5–202) and the provisions on civil actions by Administrator (Section 6–113).

■ It is clear from a reading of this section that it only prohibits use of the negotiable instrument—it does not undertake to render the instrument a nullity so that it will be the subject of a real defense, nor does it outlaw such an instrument. Instead it displays plainly an intent not to render the note non-negotiable. This is apparent from the statement contained in it that a holder is not a holder in good faith if he takes a negotiable instrument with notice that it is issued in violation of the statute, and so this is the sanction as imposed in connection with the use of negotiable instruments in a consumer transaction. It would follow that if a holder took without notice that it is issued in violation of the statute, he would be a holder in due course and would take free of equities, including that which would arise from its having been issued in violation of the UCCC. An added evidence that the framers consider the note negotiable is to be inferred from the statement that a holder in due course is not subject to other statutory liabilities resulting from violations described in other sections. Therefore, the legislature did not intend that the use of a negotiable instrument in a consumer transaction serves to render the instrument a nullity or to destroy its negotiability. Its recognition that a holder in due course can cut off equities, including violation of the prohibition against the use of negotiable instruments, manifests an intent that their negotiability is not impaired.

Finally, the sole sanction flowing from violation of the consumer act by use of a negotiable instrument is that the debtor is not obligated to pay the credit service charge or loan finance charge and has a right to recover from the violator in not only the amount of the finance charge, but possibly three times the amount of the finance charge in addition, 14A O.S.A. Section 5–202(1). On refusal to refund the finance charge within a reasonable time, the court is empowered to impose a penalty not exceeding the greater of the amount of the finance charge or ten times the amount of the excess charge, 14A O.S.A. Section

5–202(4). Since these are the sole remedies or sanctions provided in the statutes which have been analyzed, it becomes even more plain that it was not intended that the ostensible promissory note was per se null and void or invalid as contrary to public policy.

### B. Comparison with Other Statutes.

An examination of the other statutes furnishes additional evidence that Oklahoma did not intend to outlaw the purported negotiable instrument in a consumer transaction. Vermont Stat.Ann., Title 9, Section 2455 (1971), spells out the breadth of the defense as against one who has taken the instrument. It provides that any person taking an instrument made by a consumer in connection with a contract holds it subject to the defenses that "would be available to the consumer in an action on a simple contract."

Also, the model act proposed by the National Consumer Law Center uses a similar approach in that it forbids a seller to use a negotiable note in a consumer transaction, and then goes on to provide that the holder taking such a note takes it subject to all the consumer's defenses. See National Consumer Act, Section 2.405.[2] If the UCCC draftsmen in Oklahoma had intended to eliminate negotiability of consumer paper in addition to prohibiting its use, they could have done so by adopting language such as that shown in the Vermont Statute or the model measure.[3]

### C. The "Sum Certain" Issue on this Appeal.

On this appeal the appellees have focused on the sum certain requirements of negotia-bility. Such an approach is unavailing here because, as noted above, the uncertainty is not apparent from the face of the instrument. A further weakness is its failure to come to grips with the relevant statutes as applied to the facts.

One of the positions taken by Judge Chandler was that the sum was too uncertain from the standpoint of one in the position of a holder in due course due to the fact that 14A O.S.A. Sections 2–209, 2–210 authorizes the consumer to prepay the loan prior to maturity and further allows a deduction from the total finance charge (or interest amount) equal to the unearned interest measured by the time of the prepayment in relation to the amount of the principal and the amount of the finance charge.

Since, however, notice of the existence of such a condition is not given, there is no occasion for furnishing a formula; the lack of a formula does not then affect the negotiability. Even if a holder in due course were subject to the prepayment rebate provision, it could operate only as a *defense*; it would not render the original instrument non-negotiable. The argument would be that the UCCC had added a new real defense to those listed in UCC 3–305, a new variant of illegality, perhaps. That the subject statutory provision could only be a defense finds support in the manner in which courts have applied the usury laws (an analogous situation) to the claims of a holder in due course. Even courts which have denied a holder in due course the right to recover the part of the interest which is usurious have not challenged the negotiability of the underlying instrument. They have merely held that the usury statute gives rise to an illegality defense to the

---

**2.** See also Conn.Gen.Stat.Ann. Section 42–136; Conn.P.A. 73–466 (June 7, 1973); Countryman, The Holder In Due Course and Other Anachronisms in Consumer Credit, 52 Texas L.Rev. 1 (1973); Note; A Case Study of the Impact of Consumer Legislation: The Elimination of Negotiability and the Cooling-Off Period, 78 Yale L.J. 618 (1969).

**3.** The Official Comment to UCCC 2–403, *supra*, mentions that the prohibition against use of negotiable instruments in consumer transac-tions will be known in the financial community and that professional financiers would not normally qualify as holders in due course of consumer paper. This may be true but it does not support the argument that consumer paper is removed from the negotiable category. In any event, whether a holder takes in good faith is a question of the particular facts and as Professor Countryman suggests, it is easy to qualify as a good faith purchaser. See Countryman, *supra*, 52 Tex.L.Rev. 1, 3, 8–9 (1973).

extent of the usury; that the statute makes the transaction a nullity only to the extent of the usury. *See, e. g., Lucas v. Beco Homes Inc.,* 494 S.W.2d 417 (Mo.1973); *Lydick v. Stamps,* 316 S.W.2d 107 (Tex.Civ. App.1958); *Whitaker v. Smith,* 255 Ky. 339, 73 S.W. 1105 (1934); *McCormick v. Fallier,* 223 Ala. 80, 134 So. 471 (1931). The fact that usury laws may render the face amount uncertain—in the sense that unless a holder knows what was the interest rate involved in the note, he cannot know whether he will be barred from collecting the usurious excess—has not led these courts to find such notes non-negotiable.

Section 3–106(c) declares that the sum payable is a sum certain even though it is to be paid "with a stated discount or addition if paid before or after the date fixed for payment." Thus, if the instrument on its face provides for a discount if paid before the date fixed for payment, the formula for computing this would have to be shown. The comment makes this clear when it says the computation must "be made from the instrument itself without reference to any outside source * * *." This was the problem in *Walls v. Morris Chevrolet,* 515 P.2d 1405 (Okl.App.1973), cited by both Jim Walter Homes and by Judge Chandler in his memorandum opinion. A particular formula for computing the discount was not provided on the face of the instrument. The mentioned provision of Section 3–106 and also the *Walls* case are then entirely irrelevant to the present analysis because here the note itself does not allude to a provision creating uncertainty in amount as did the note in *Walls.* Our note is a simple unencumbered promise to pay a definite sum.

The only case which we have discovered which is factually similar to the instant case is that of the Supreme Court of Wisconsin in *Mortgage Associates v. Siverhus,* 63 Wis. 650, 218 N.W.2d 266 (1974). Wisconsin had not enacted the UCCC but had a statute similar to it which guaranteed a consumer's prepayment right and prohibited sellers' obtaining consumer paper in a transaction. The Wisconsin statutory scheme also pro-

vided for penalties against such a seller. The Wisconsin court had no difficulty upholding the negotiability of the instrument. It summarized its views as follows:

This section as then written does not affect the negotiability of a presigned note but penalizes a seller for an unfair trade practice.

218 N.W.2d at 273.

In sum: From a consideration of the relevant statutes together with the facts before us, the instrument was indeed negotiable. It satisfied all of the requirements of negotiability contained in the UCC and it was not rendered illegal by the UCCC statutory provision which prohibited the use of negotiable paper by sellers in consumer transactions, but the ultimate consequences of this holding might be matters not presently before us. We do not know, for example, whether these notes have been negotiated. Similarly, large money judgments are not foreordained even though it is conceivable that the court will rule that the purchasers may be excused from the payment of the finance charges. Declaratory judgment or injunction or both could furnish the design of the remedy. If the notes have not been negotiated, the money judgments would be based upon rebate of interest already paid.

II.

As we have previously noted, the trial court refused to certify the action as a class action. Upon remand by this court which vacated this ruling, the trial court again refused to certify. This time the trial court adopted reasons which had been given by Judge Daugherty in *Harvey v. Jim Walter Homes, Inc.* (Docket No. 72–541, filed April 5, 1973, W.D.Okl.). That was a truth-in-lending case brought under 15 U.S.C. Section 1631 *et seq.* together with the Oklahoma Uniform Consumer Credit Code, 14A O.S.A. Section 1–101 *et seq.* Judge Daugherty had found that the four requirements of Fed.R.Civ.P. 23(a), namely, numerosity, commonality, typicality and adequacy of representation, had been met but that plaintiffs had not demonstrated a class ac-

tion to be a superior method for conducting litigation.

In *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336 (10th Cir. 1973), relied on by Judge Daugherty in the mentioned ruling, the plaintiffs, holders of defendant bank's Bank Americards, alleged that the bank had failed to make the disclosures required by the Truth-in-Lending Act. In refusing to certify the class as not meeting the superiority requirement of Rule 23(b)(3), the trial court emphasized the huge potential recovery and also the remedy given by the Act itself as reasons for its decision not to certify the class. We affirmed, ruling that the trial court had not abused its discretion and we noted that where, as there, the complaint did not show actual damages, the recovery sought would be disproportionately oppressive. The minimum recovery was there estimated to be $18 million. Another reason given by this court in support of the denial was that the Act created a species of private attorney general, as a result of which the plaintiffs were not left without a remedy.

The case at bar is substantially different from *Wilcox*. The damage element of the *Wilcox* case was a small statutory recovery for each individual. This represented no actual damage but rather a small statutory liquidated sum. Here there is actual damage to the consumer and, in addition, there exists hazard of suffering transfer to a holder in due course. Furthermore, the class is not astronomical in size and thus it does not present complex administrative burdens. The strongest argument here in favor of the superiority of the class action approach is that a single lawsuit could not possibly suffice as it did in the *Wilcox*-type of case. The giving of damages to a single party and ordering the defendant to change the one negotiable instrument to a non-negotiable instrument would fail to remedy the problem for the other members of the class. This case requires that all of the parties be before the court so that complete justice can be done in one action.

Finally, the reason given by the court that the damages would be prohibitively high—or in his words, annihilating—is not a valid basis for refusal to certify. Conceivably the awards at this juncture may not include treble damages, but even if they do there is nothing in the record to indicate that this would prove to be annihilating. In any event, the damages flow from an unlawful trade practice—a practice prohibited by statute—and thus there is no basis for saying that the award is disproportionate to the magnitude of the violation.

■ It follows that there is no basis for ruling that the class action is not a superior method for disposing of the case. Indeed, from the present showing it must be concluded that the instant case presents a classic example of a Rule 23 case.

The judgment of the district court must be reversed and the cause must be remanded for further proceedings consistent with the views expressed above.

It is so ordered.